**Clifford Scott AYMES, Plaintiff–Appellant,**

v.

**Jonathan BONELLI, doing business as Island Swimming Sales, Inc.; and Island Recreational, Defendants–Appellees.**

No. 82, Docket 92–7098.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1992.

Decided Dec. 2, 1992.

Clifford Scott Aymes, pro se.

Thomas O'Rourke, New York City (Susan E. McHale, Wyatt, Gerber, Burke & Badie, of counsel), for defendant-appellee.

Before MINER, ALTIMARI, and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Clifford Scott Aymes, proceeding *pro se*, appeals from a judgment of the United States District Court for the Southern District of New York (Martin, *J.*) dismissing his complaint alleging, *inter alia*, copyright infringement. On appeal, Aymes challenges the district court's finding that a computer program he had created for the defendant-appellee Island Recreational ("Island") was a "work for hire" under the

Copyright Act of 1976, 17 U.S.C. § 201(b) (1988), as construed in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

In May 1980, Aymes was hired by defendant-appellee Jonathan Bonelli, the president and chief executive officer of Island, to work as a computer programmer. Island operated a chain of retail stores selling swimming pools and related supplies. Aymes, who received a graduate degree from Cornell University's School of Engineering in 1981, worked with Island's computer systems from 1980 to 1982.

During that period, Aymes created a series of programs called "CSALIB" under the general direction of Bonelli, who was not a professional computer programmer. CSALIB was used by Island to maintain records of cash receipts, physical inventory, sales figures, purchase orders, merchandise transfers, and price changes. There was no written agreement between Bonelli and Aymes assigning ownership or copyright of CSALIB. Aymes does contend, however, that Bonelli made him an oral promise that CSALIB would only be used at one computer in one Island office.

Aymes did most of his programming at the Island office, where he had access to Island's computer hardware. He generally worked alone, without assistants or co-workers, and enjoyed considerable autonomy in creating CSALIB. This autonomy was restricted only by Bonelli who directed and instructed Aymes on what he wanted from the program. Bonelli was not, however, sufficiently skilled to write the program himself.

Although Aymes worked semi-regular hours, he was not always paid by the hour and on occasion presented his bills to Bonelli as invoices. At times, Aymes would be paid by the project and given bonuses for finishing the project on time. It is undisputed that Aymes never received any health or other insurance benefits from Island. It is similarly undisputed that Island never paid an employer's percentage of Aymes's payroll taxes and never withheld any of his salary for federal or state taxes. In fact, Aymes was given an Internal Revenue Service 1099 Non–Employee Compensation form instead of the standard employee W–2 form.

Aymes left Island in September 1982 when Bonelli unilaterally decided to cut Aymes's hours. Aymes considered this to be a breach of an oral agreement he allegedly made with Bonelli. At the time Aymes left, Island owed him $14,560 in wages. Aymes also requested payment for multi-site use of CSALIB. When he became persistent in his demands for compensation, however, Bonelli insisted that he sign a release for his rights to CSALIB in order to receive the back earnings. Aymes refused to sign and was not paid.

On March 12, 1985, Aymes registered CSALIB in his own name with the United States Copyright Office. On March 21, 1985, Aymes filed a complaint against Bonelli and Island in the United States District Court for the Southern District of New York (MacMahon, *J.*), alleging copyright infringement under the Copyright Act of 1976 and various state claims.

After a lengthy series of pre-trial motions, the copyright infringement claims were bifurcated from the pendent state claims and the case was reassigned. On September 10, 1991, a bench trial was conducted by the district court (Martin, *J.*) on the copyright infringement claim with Aymes appearing *pro se*. On September 24, 1991, the district court found that, contrary to Aymes's contention, Bonelli never agreed to limit Island's right to use or modify CSALIB. The district court further held that Aymes had no copyright over CSALIB because the program was a "work made for hire," which meant that the authorship belonged to Island under 17 U.S.C. § 201(b) (1988). Accordingly, the court dismissed Aymes's copyright infringement claim.

Aymes then filed a motion for reconsideration in light of *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), which established a multi-factored test for determining whether a party is an employee under the work made for hire doctrine. The court, in an opinion issued on November 6, 1991, addressed the *Reid* factors and concluded that Aymes was Island's employee. Consequently, the district court adhered to its original decision.

On November 21, 1991, a second bench trial was held on the remaining claims, but the only issue presented by Aymes was his contention that he was entitled to a rescission of his agreement with Island due to Island's failure to pay him the $14,560 it owed him. The district court rejected Aymes's claim for rescission and denied Aymes's additional claims for relief, but ordered Island to pay Aymes $34,549.13 for back pay plus interest.

Aymes now appeals.

## DISCUSSION

Under the Copyright Act of 1976, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a) (1988). Although the author is generally the party who actually creates the copyrightable work, the Act provides:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

*Id.* § 201(b). The Act defines a work made for hire as: "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use ... if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.* § 101.

It is undisputed that Aymes and Bonelli never signed a written agreement assigning ownership rights in CSALIB. We must therefore consider whether the program was a work prepared by Aymes as an employee within the scope of his employment. If so, CSALIB qualifies as a "work made for hire" whose copyright belongs to Island as Aymes's employer.

The Copyright Act does not define the terms "employee" or "employment," and, consequently, the application of these terms is left to the courts. In *Reid*, the Supreme Court addressed the question of when an individual is an employee under the work for hire doctrine. Relying extensively on the legislative history of the Copyright Act, the Court concluded that to "determine whether a work is for hire under the Act, a court first should ascertain, using principles of the general common law of agency, whether the work was prepared by an employee or an independent contractor." *Id.* at 751, 109 S.Ct. at 2178. The Court then set forth the factors to be used in making this determination:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required, the source of the instrumentalities and tools, the location of the work; the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits, and the tax treatment of the hired party.

*Id.* at 751–52, 109 S.Ct. at 2178–79 (footnotes omitted). The Court noted that no single factor is determinative. *Id.* at 752, 109 S.Ct. at 2179.

## I. *Application of the* Reid *Test*

The district court applied the *Reid* test thoroughly, factor-by-factor. The court's

factual findings as to the presence or absence of the *Reid* factors cannot be disturbed unless clearly erroneous. *See* Fed. R.Civ.P. 52(a). However, the ultimate determination of whether CSALIB was a work for hire is reviewed *de novo*. *See Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1215 n. 5 (2d Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972); *Donaldson Publishing Co. v. Bregman, Vocco, & Conn, Inc.*, 375 F.2d 639, 641 (2d Cir.1967), *cert. denied*, 389 U.S. 1036, 88 S.Ct. 768, 19 L.Ed.2d 823 (1968).

We begin our analysis by noting that the *Reid* test can be easily misapplied, since it consists merely of a list of possible considerations that may or may not be relevant in a given case. *Reid* established that no one factor was dispositive, but gave no direction concerning how the factors were to be weighed. It does not necessarily follow that because no one factor is dispositive all factors are equally important, or indeed that all factors will have relevance in every case. The factors should not merely be tallied but should be weighed according to their significance in the case.

For example, the factors relating to the authority to hire assistants will not normally be relevant if the very nature of the work requires the hired party to work alone. In such a case, that factor should be accorded no weight in applying the *Reid* test. Having the authority to hire assistants, however, might have great probative value where the individual claiming to be an independent contractor does exercise authority to enlist assistants without prior approval of the party that hired him. In the latter case, this show of authority would be highly indicative that the hired party was acting as an independent contractor.

Some factors, therefore, will often have little or no significance in determining whether a party is an independent contractor or an employee. In contrast, there are some factors that will be significant in virtually every situation. These include: (1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party. These factors will almost always be relevant and should be given more weight in the analysis, because they will usually be highly probative of the true nature of the employment relationship.

Although the *Reid* test has not yet received widespread application, other courts that have interpreted the test have in effect adopted this weighted approach by only addressing those factors found to be significant in the individual case. *See, e.g., Marco v. Accent Publishing Co.*, 969 F.2d 1547 (3d Cir.1992) (holding that photographer was an independent contractor while ignoring some factors and noting that some were "indeterminate" and should not be considered); *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.*, 952 F.2d 769 (3d Cir.1991) (in appeal from a directed verdict for hiring party, holding that a computer programmer could be an independent contractor without addressing several of the *Reid* factors); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir.1990) (finding that a drafting service operated as an independent contractor to a builder based on only eight factors, ignoring others); *Johannsen v. Brown*, 797 F.Supp. 835 (D.Or.1992) (finding that artist/printer is a graphic designer based on several factors, ignoring others); *Kunycia v. Melville Realty Co.*, 755 F.Supp. 566 (S.D.N.Y.1990) (finding an architect to be an independent contractor on the basis of only four factors, ignoring others); *Kelstall–Whitney v. Mahar*, No. 89 Civ. 4684, 1990 WL 69013, 1990 U.S. Dist. LEXIS 6186 (E.D.Pa. May 23, 1990) (finding that computer programmer was independent contractor based on only a few factors, ignoring others).

In contrast, in the instant case the district court gave each factor equal weight and simply counted the number of factors for each side in determining that Aymes was an employee. In so doing, the district court over-emphasized indeterminate and thus irrelevant factors having little or no bearing on Aymes's case. Because we find

that the *Reid* test was not intended to be applied in a mechanistic fashion, we review each of the factors and consider their relative importance in this case. We begin by addressing those factors bearing most significantly in our analysis.

### a. *The Right to Control*

■ The district court did not specifically address whether Aymes or Island Swimming had the right to control the manner of CSALIB's creation. Even without a specific finding, it is clear from the record that Bonelli and Island had the right to control the manner in which CSALIB was created. Aymes disputed Bonelli's purported skill at programming, but even without such knowledge Bonelli was capable of directing Aymes on CSALIB's necessary function. Aymes was not working entirely alone. He received significant input from Bonelli in programming CSALIB, and worked under programming limitations placed by Bonelli. Consequently, this factor weighs heavily in favor of finding that Aymes was an employee.

### b. *The Level of Skill*

■ The district court found that although Aymes's ability as a programmer required skills "beyond the capacity of a layman, it required no peculiar expertise or creative genius." We disagree. Aymes's work required far more than merely transcribing Bonelli's instructions. Rather, his programming demanded that he use skills developed while a graduate student at Cornell and through his experience working at a family run company. Other courts that have addressed the level of skill necessary to indicate that a party is an independent contractor have held architects, photographers, graphic artists, drafters, and indeed computer programmers to be highly-skilled independent contractors. *See, e.g., MacLean,* 952 F.2d at 777 (computer programmer); *Marco,* 969 F.2d 1547 (photographer); *M.G.B. Homes,* 903 F.2d at 1492 (drafting service); *Johannsen,* 797 F.Supp. 835 (artist/printer); *Kunycia,* 755 F.Supp. at 575 (architect); *Kelstall–Whitney,* 1990 WL 69013, 1990 U.S. Dist. LEXIS 6186 (computer programmer).

We therefore conclude that the district court erred in relying on Aymes's relative youth and inexperience as a professional computer programmer. Rather, the court should have examined the skill necessary to perform the work. In this case, Aymes was clearly a skilled craftsman. Consequently, this factor weighs heavily in his favor.

### c./d. *The Employee Benefits and Tax Treatment*

■ The district court found that Aymes received no employee benefits from Island, but disregarded this factor as merely being an indication that Aymes was an employee who worked "off the books." It is undisputed that Aymes was not provided with health, unemployment, or life insurance benefits. Similarly, it is uncontested that Island did not pay a share of Aymes's social security taxes and did not withhold federal or state income taxes.

The failure of Island to extend Aymes any employment benefits or to pay any of his payroll taxes is highly indicative that Aymes was considered an outside independent contractor by Island. Indeed, these two factors constitute virtual admissions of Aymes's status by Bonelli himself. Moreover, they also point out a basic inequity in Aymes's treatment. Island benefitted from treating Aymes like an independent contractor when it came to providing benefits and paying a percentage of his payroll taxes. Island should not in one context be able to claim that Aymes was an independent contractor and ten years later deny him that status to avoid a copyright infringement suit.

These two factors are given even greater weight because they are undisputed in this case. During the ten years in which this case has been litigated, all the other issues have been hotly contested. But for purposes of benefits and taxes, Island definitely and unequivocably chose not to treat Aymes as an employee. Island deliberately chose to deny Aymes two basic attributes of employment it presumably extended to

its workforce. This undisputed choice is completely inconsistent with their defense.

The importance of these two factors is underscored by the fact that every case since *Reid* that has applied the test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes. *See MacLean,* 952 F.2d at 777; *Marco,* 969 F.2d at 1550; *M.G.B. Homes,* 903 F.2d at 1492; *Johannsen,* 797 F.Supp. at 841; *Kunycia,* 755 F.Supp. at 575; *Kelstall–Whitney,* 1990 WL 69013, 1990 U.S. Dist. LEXIS 6186.

### e. *The Right to Assign Other Projects*

■ The district court found that Bonelli had the right to and did assign Aymes other projects in addition to the creation of CSALIB. This is fairly strong evidence that Aymes was an employee, since independent contractors are typically hired only for particular projects. However, this factor carries less weight than those evaluated above, because the delegation of additional projects to Aymes is not inconsistent with the idea that he was Island's independent trouble shooter who might be asked to intervene as computer problems arose. Accordingly, this factor weighs fairly strongly but not conclusively for Island.

### f. *Remaining Factors*

The remaining factors are relatively insignificant or negligible in weight because they are either indeterminate or inapplicable to these facts. It is important to address them each individually, however, to show why they are relatively insignificant. Although none carries much weight, they are addressed in order of their relative importance in this determination.

"The method of payment" is a fairly important factor, but it is indeterminate in this case because there is evidence to support both sides. The district court found that Aymes was sometimes paid hourly wages and at other times was paid a flat fee for completing a specific task. The court recognized that this factor "might lend some support to the idea that he was not an employee," since the lump sum payments indicate that Aymes was contracted for individual assignments. The payment of regular wages, however, indicate that Aymes was an employee. We therefore agree with the district court that this factor is indeterminate.

"Whether the work is Island's regular business" is a factor that weighs in favor of Aymes's contention that he was an independent contractor. The district court found that this factor weighed in Island's balance because "it was part of their regular business activity to modify programs for their computers." The district court misinterpreted the category, and its finding is, therefore, erroneous. The purpose of this factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business. For example, work done by a computer programmer employed by a computer software firm would be done in the firm's regular business. Because Island Swimming is involved in the business of selling swimming pools, however, Aymes's programming was not done in the company's regular business.

We find, however, that this factor will generally be of little use in evaluating a claim that a work was made for hire. This factor carries very little weight, because pool companies do not survive by merely hiring pool designers and salespeople. For example, most companies hire numerous support personnel such as managers, accountants, secretaries, custodians, and computer programmers. That Aymes did not work in Island's regular business is not strongly indicative of whether he was an independent contractor, even if it does weigh in his favor.

"Whether Island is in business" is a factor that will always have very little weight in this analysis. Island was in the pool business, but this indicates nothing about whether Aymes was an employee in that business. This factor will generally be of little help in this analysis, and it weighs negligibly in favor of Island in this case.

"The discretion over when and how long to work" is indeterminate since the district court found that Aymes had some degree

of flexibility in his hours but that Island clearly had control over the project. The district court ruled that "this factor is fairly evenly balanced between the parties." We agree.

"The duration of the relationship" is a similarly inconclusive factor. The district court found that the relationship between the parties extended over a long period of time, which indicates that Aymes was an employee. Although Aymes worked two years for Island, he did occasional work for others at the same time. Moreover, there were undisputed gaps in his employment, which suggests that he was not a full-time employee. The district court's finding is not clearly erroneous, but given the particular facts of this case this factor has only slight weight in Island's favor.

"The location of the work" was not specifically addressed by the district court. It is clear from the record, however, that Aymes did most of his programming at Island's offices, even if he did do some work at home. However, since Aymes was required to work in Island's offices in order to have access to its computer hardware, this factor should be accorded negligible weight.

Similarly, "the source of the equipment" carries little weight in the analysis. All the equipment Aymes used was located at Island's office. Again, however, the programming by necessity had to be performed on Island's machines.

"The authority to hire assistants" is also virtually meaningless in a situation where the hired party does not need assistants.

■ A review of this analysis shows that the significant factors supporting Island's contention that Aymes was an employee include Island's right to control the means of CSALIB's creation and Island's right to assign other projects. The significant factors supporting Aymes's argument that he was an independent contractor include: the level of skill needed to create CSALIB; the decision of Island not to offer him benefits; and his payment of his own social security taxes. The other factors were either indeterminate, because they were evenly balanced between the parties, or of marginal significance, because they were inapplicable to these facts.

Examining the factors for each side in terms of their importance, we conclude that the only major factor strongly supporting Island is that it directed the creation of the program. Island did reserve the right to assign Aymes other projects, which is a major factor, but under these facts this was not necessarily inconsistent with an independent contractor relationship. Supporting Aymes's argument that he was an independent contractor, however, are several important factors—his skill, and the tax and benefit factors—that outweigh the elements supporting Island. The other factors outlined in *Reid* are either indeterminate or of negligible importance, and cannot outweigh the significance we attach to Island's choice to treat Aymes as an independent contractor when it was to Island's financial benefit. Now that this treatment is no longer to Island's benefit, the company must still adhere to the choice it made.

On balance, application of the *Reid* test requires that we find Aymes to be an independent contractor when he was creating CSALIB for Island. Consequently, we hold that CSALIB is not a work for hire. Aymes therefore owns the copyright as author of the program.

## II. *Issues on Remand*

Having concluded that Aymes owns the copyright to CSALIB, we would ordinarily next consider the merits of Aymes's infringement claims. There is evidence in the record that Island is no longer using any part of Aymes's ten year old program. However, we cannot determine whether Island is infringing Aymes's copyright since the district court did not decide this issue.

We note, though, that the district court has already ruled that Aymes "cannot realistically dispute the fact that he sold defendants the computer program ... and that defendants are, therefore, rightful owners of the program." *See Memorandum and Order of Judge MacMahon, May 20, 1988* (citation omitted). The court went on to reason that Island had a clear right to use

the program that it had purchased from Aymes. The court noted that the issue left unresolved was whether Island had made unlicensed derivatives of the program for other external corporations. However, three years later the district court found that Island never made an agreement with Aymes to limit Island's ability to use CSALIB on multiple machines. *See Memorandum of Reconsideration of Judge Martin, November 6, 1991* (adhering to previous ruling on September 24, 1991). Although these findings make it unlikely that Aymes will prevail on his infringement claim, we remand to the district court for its determination.

An additional issue on remand arises from Island's argument that Bonelli is a "joint owner" of the copyright to CSALIB under 17 U.S.C. § 201(a) (1988) because of his contribution to its creation. Although CSALIB was not a work for hire, it might still possibly be considered a joint work due to Bonelli's involvement in its development. Because there were no specific findings of fact on this issue, we similarly remand the issue for the district court's determination.

### CONCLUSION

Based on the foregoing, the judgment of the district court is reversed, and the case remanded for further proceedings not inconsistent with this opinion.