DONALD J. LEWIS, JR. AND BARBARA D. LEWIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Commissioner
Docket No. 20621-92
United States Tax Court
T.C. Memo 1993-635; 1993 Tax Ct. Memo LEXIS 654; 66 T.C.M. (CCH) 1830; December 29, 1993, Filed *654 For petitioners: Toni Robinson, Patrick Duffany, and Joe Bavaro. For respondent: Carmino Santaniello. WOLFE
WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 364 in petitioners' Federal income tax for 1990. The sole issue for decision is whether Barbara D. Lewis (petitioner) properly was classified as a common law employee or was an independent contractor during 1990. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Milford, Connecticut, at the time they filed their petition. From 1985 through 1992, petitioner sold hair care products to salons for Professional Products of Connecticut, Inc. (PPCI). PPCI is a wholesale distributor *655 of beauty supplies. Petitioner located potential customers, offered PPCI's hair care products for sale, took orders for products, monitored customers' repeat orders, and taught motivational and product knowledge classes for the customers. Petitioner also arranged for technical classes, which were taught by employees of the product manufacturers. Petitioner transmitted her customers' orders to PPCI on a daily basis. The customers made payment to PPCI, and PPCI issued biweekly compensation checks to petitioner. Petitioner was paid solely on a commission basis, without advance draw. During the year in issue, petitioner sold exclusively for PPCI and was prohibited from selling the products of PPCI's competitors. A noncompetition agreement between petitioner and PPCI provided that for 1 year after termination of her relationship with PPCI petitioner was barred from selling PPCI's competitors' products in Connecticut, except for two specific counties other than the county in which she sold for PPCI. PPCI assigned exclusive territories to all of its salespeople. Sales personnel were not permitted to sell products within any sales territory that was assigned to another sales representative *656 of PPCI. When she began working for PPCI, petitioner was assigned a territory in Fairfield County, Connecticut. During the following 7 years, petitioner worked at developing sales of PPCI products in that territory. PPCI determined who would service petitioner's sales territory while petitioner was on maternity leave. During her first maternity leave in 1990, petitioner continued to work limited hours and received commissions on sales in her territory at a rate of 4.5 percent. During her second maternity leave between November 1991 and January 1992, petitioner did not perform significant services and did not receive compensation from PPCI. When petitioner returned from maternity leave in January 1992, over her objections she was assigned a sales territory smaller than the Fairfield County territory she had serviced before her leave. Petitioner shortly resigned as a result of that reassignment. PPCI set the prices for its products and provided petitioner with price lists. Petitioner provided those price lists and other promotional literature to potential customers. Petitioner filed three principal types of written reports with PPCI. The first was a Daily Activity Report *657 Sheet. PPCI provided a form for this report, but petitioner modified the standardized form so that she could present more information to PPCI. The report included the following information: Day of the week, name of the account, contact person, special items sold in addition to the regular weekly order, follow-up recommendations and notations, classes to be scheduled, and returns of products. Petitioner furnished the Daily Activity Report Sheet to PPCI management every work day. PPCI also obtained detailed daily information concerning petitioner's activities from the sales orders, which promptly were converted to commission reports since PPCI's records were computerized. Petitioner also filed goal sheets with PPCI. A goal sheet indicated sales of particular products which PPCI wanted its salespeople to promote. The salespeople set goals for themselves concerning sales of these specially identified products and kept PPCI apprised of the sales of these specific products through submission of the goal sheets. Petitioner also filed with PPCI technical request forms or reports, by which petitioner requested assignment of a manufacturer's representative to teach technical classes *658 for a customer. Petitioner determined her hours of work during any particular day or week and in general selected the potential customers she would call upon. PPCI did not provide her with a list of clients to solicit at any particular time. PPCI did provide petitioner with leads, which generally were the result of telephone calls received by PPCI from salons interested in purchasing PPCI's products. PPCI would give petitioner the name and telephone number of those potential clients. Petitioner received several leads from PPCI every month. Petitioner was required to follow up on the leads provided by PPCI and always did so. Petitioner had been employed by Southern New England Beauty Supply Co., a business owned by her brother, when it was acquired by PPCI. After the change of ownership, petitioner worked for PPCI commencing in April 1985. Under these circumstances, petitioner received no training in the basics of selling beauty supplies. PPCI arranged for sales personnel to receive training or product education from manufacturers' representatives on a continual basis. In addition, petitioner regularly attended weekly sales meetings at the PPCI office. In general, all of *659 PPCI's salespeople, including petitioner, attended those meetings. She also attended sales shows at the PPCI offices and throughout Connecticut. When petitioner stayed out of town overnight for a sales show, PPCI reimbursed her for the overnight expenses. Petitioner used one room in her home as an office. Petitioner furnished the room with a desk, a chair, a telephone, bookshelves, and a calculator. The total cost of the furnishings was under $ 1,000. PPCI provided petitioner with a facsimile (fax) machine to transmit her orders to PPCI each day. The fax machine was the property of PPCI, and petitioner returned it to PPCI upon terminating her relationship with the company in 1992. PPCI did not reimburse petitioner for the cost of any of the items in her office. PPCI did not pay petitioner's monthly telephone bill. Petitioner claimed business deductions with respect to the portion of her home used as an office. Petitioner received manufacturers' literature describing particular products and their functions from PPCI. She put these handouts into plastic pages and file folders and then gave the materials to customers and potential customers. Petitioner paid for the plastic *660 pages and file folders. Occasionally petitioner gave free samples of products to customers. She purchased these samples from PPCI. She expended $ 401 on samples in 1990. To facilitate sales, petitioner sometimes would set up displays at the salons in her territory. PPCI did not order the displays or reimburse petitioner for the costs of the displays. Petitioner sold products exclusively for PPCI for 7 years. Petitioner's relationship with PPCI was terminable at the will of either party. Under pressure from PPCI, petitioner did terminate the relationship in 1992. Petitioner participated in a group health insurance plan through PPCI. Petitioner contributed $ 5 per week to this plan, which only covered petitioner, not her family members. PPCI did not provide petitioner with pension benefits, sick leave, or holiday pay. PPCI issued petitioner a Form W-2 for the 1990 taxable year reflecting remuneration paid in the amount of $ 28,061.18. PPCI withheld Federal income taxes and Social Security (FICA) taxes from petitioner's biweekly paychecks. Petitioners timely filed their 1990 joint Federal income tax return. On Schedule C of their 1990 tax return, petitioners reported net *661 income of $ 22,630, which consisted of gross receipts from the sales activities of petitioner Barbara D. Lewis for PPCI in the amount of $ 28,061 and deductions related to those activities in the amount of $ 5,431. By statutory notice respondent determined that the items that petitioners reported on Schedule C were properly reportable as wage income and unreimbursed employee expenses. The amount of the expenses is not in dispute. OPINION The issue for decision is whether petitioner, Barbara D. Lewis properly is classified as a common law employee or as an independent contractor during 1990. Petitioners contend that Barbara D. Lewis was an independent contractor and, as such, was entitled to deduct the full amount of her business expenses on Schedule C pursuant to section 162. Respondent determined that the expenses of petitioner Barbara D. Lewis related to sales of PPCI products are unreimbursed employee expenses because she was an employee of PPCI during 1990. Unreimbursed employee expenses are miscellaneous itemized deductions and only deductible to the extent they exceed 2 percent of the taxpayers' adjusted gross income. Sec. 67(a). Respondent's determinations as to petitioners' *662 tax liability are presumed correct, and petitioners have the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners have not carried their burden, and we hold for respondent. Whether a taxpayer is an independent contractor or an employee is a question of fact. Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). Among the relevant factors in determining the substance of an employment relationship are the following: (1) The degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in facilities; (3) the taxpayer's opportunity for profit or loss; (4) permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968); *663 United States v. Silk, 331 U.S. 704, 716 (1947); Aymes v. Bonelli, 980 F.2d 857, 860-861 (2d Cir. 1992); Simpson v. Commissioner, supra at 984-985; Leitch v. Commissioner, T.C. Memo. 1993-154; sec. 31.3121(d)-1(c)(2), Employment Tax Regs. (setting forth criteria for identifying common law employees). No one factor is determinative, Community for Creative Non-Violence v. Reid, 490 U.S. 730, 752 (1989), rather all the incidents of the relationship must be assessed and weighed. NLRB v. United Insurance Co., supra at 258; Silk v. United States, supra at 716; Simpson v. Commissioner, supra at 985. The factors should not be weighed equally but should be weighed according to their significance in the particular case. Aymes v. Bonelli, supra at 861. In the present case the facts have been established by stipulation and by the testimony of petitioner. We are not required to accept at face value a petitioner's self-serving *664 and uncorroborated testimony, particularly where other and better evidence to prove the point in question is available. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Here petitioner introduced no testimony by former coworkers or customers to corroborate her description of the way PPCI ran its business. Petitioner's own testimony was evasive, incomplete, and unconvincing. Her claim to independence in her work is not consistent with the record. Application of the factors usually considered in establishing the nature of the working relationship under the circumstances of this case leads to the conclusion that in 1990 petitioner was a common law employee of PPCI. 1. Degree of Control
The alleged employer's degree of control over the details of the taxpayer's work is the most important factor in determining if a common law employment relationship exists. See Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). In Reed v. Commissioner, 13 B.T.A. 513, 520 (1928), *665 revd. and remanded 34 F.2d 263 (3d Cir. 1929), revd. per curiam 281 U.S. 699 (1930), the Board of Tax Appeals stated: "the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in its accomplishment, as well as the result to be attained." This test is still the master test of an employment relationship. Matthews v. Commissioner, supra at 361; Hawkins v. Commissioner, T.C. Memo. 1993-350. The employment tax regulations state this factor as follows: Generally * * * [an employer-employee] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that *666 the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.
Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.
All that is necessary is that the principal have the right to control the details of the salesperson's work. McGuire v. United States, 349 F.2d 644, 646 (9th Cir. 1965); Kiddie v. Commissioner, 69 T.C. 1055, 1058 (1978). It is not necessary for the principal actually to control the details of an employee's work. PPCI had significant rights of control over petitioner in her work. Petitioner reported all of her sales activities to PPCI on a daily basis through the Daily Activity Report Sheet. Petitioner only sold products for PPCI and was prohibited from selling competitors' products. In recent cases this Court has considered the restriction to sales of the company's products important. Contrast Johnson v. Commissioner, T.C. Memo. 1993-530, in which a salesman was prohibited from handling competitors' products and was held to be a common law employee with Butts v. Commissioner, T.C. Memo. 1993-478, *667 in which an Allstate insurance salesman, held to be an independent contractor, was permitted to sell other companies' insurance policies. In distinguishing the cases, in Johnson this Court emphasized, inter alia, the importance of the prohibition against selling competitors' products. Even after termination of her relationship with PPCI, petitioner was severely restricted in sales activities in Connecticut. For 1 year after termination, she was allowed to sell competitors' products in only two specified counties in Connecticut, and Fairfield County was not one of these. During her employment, petitioner could not sell PPCI products in any territories to which other PPCI salespeople were assigned. PPCI controlled petitioner's assignment to a sales territory. PPCI determined who would service petitioner's sales territory while petitioner was on leave of absence. PPCI provided petitioner with leads to potential clients. Petitioner was expected to follow up on these leads and she always did so. Petitioner regularly attended sales meetings and shows. PPCI reimbursed petitioner for some of her travel expenses. PPCI determined the prices at which the products would be sold. *668 Every day petitioner submitted a report explaining to PPCI supervisors who she saw, what she sold, what was returned, what classes she suggested for that customer, and what suggestions she had for follow-up. Petitioner herself pointed out that PPCI had a further check on her daily activities through the daily order records. From these records, PPCI knew on a daily basis how many calls petitioner was making and how much she was selling. PPCI had reasonably accurate information as to how many hours petitioner worked every day. Also PPCI had data as to whether petitioner followed up on leads and whether petitioner was satisfying goals with respect to products which PPCI had told her to emphasize. Ultimately, after petitioner's second maternity leave, PPCI transferred her to a territory demanding less time than the territory she had been servicing. The fact is that PPCI had complete information about petitioner's sales activities, had the ability to control those activities, and in fact did exercise that control when management decided, correctly or incorrectly, that such exercise was in the company's interest. The record clearly indicates that petitioner worked under the direction *669 and control of PPCI -- not as an independent contractor. 2. Investment in Facilities
Petitioner maintained office facilities in her home. The cost of furnishings for such office was, by petitioner's admission, quite modest. Maintenance of a home office alone is not a sufficient basis for a finding that petitioner was an independent contractor rather than an employee. See Harris v. Commissioner, T.C. Memo. 1977-358. 3. Opportunity For Profit or Loss
Petitioner paid expenses related to her PPCI sales activities for which PPCI did not reimburse her. PPCI paid petitioner based strictly on commissions. Petitioner contends that together these two factors could have resulted in petitioner's realizing a loss from her PPCI sales activities and therefore petitioner was in business for herself. Contrary to petitioner's suggestion, compensation on a commission basis is entirely consistent with an employer-employee relationship. Texas Carbonate Co. v. Phinney, 307 F.2d 289, 292 (5th Cir. 1962); Capital Life & Health Insurance Co. v. Bowers, 186 F.2d 943 (4th Cir. 1951); Weatherguard Corp. v. United States, 137 Ct. Cl. 359, 146 F. Supp. 942 (1957). *670 While it is true that petitioner conceivably could have suffered some loss as the result of her PPCI sales activities, she may still be an employee under the common law test if her risk of loss is negligible. See Radovich v. Commissioner, T.C. Memo. 1954-220; Associated Bicycle Serv., Inc. v. United States, 128 Bankr. 436 (Bankr. N.D. Ind. 1990). Petitioner did not invest in a large inventory but only purchased samples for free distribution. Her cost for the samples for the entire year was only $ 401. Over 40 percent of the total amount of petitioners' claimed Schedule C business deductions was for expenses claimed with respect to the room in her own home that petitioner used for office space. This was not a cash expenditure. Petitioner's risk of loss from her sales activities for PPCI was negligible. 4. Permanency of the Relationship
Both petitioner and PPCI had the right of cancellation but the relationship was not intended to be a temporary one entered into for a stated period or for a class of work which would naturally end within some period of time. Petitioner testified that she was hired "indefinitely". *671 Petitioner exclusively sold PPCI products for 7 years. The length of her employment is consistent with petitioner's status as an employee of PPCI. 5. Right of Discharge
The relationship of petitioner and PPCI was terminable at the will of either party. Petitioner did terminate the relationship in 1992. Both independent contractors and employees can be terminated at will, so we accord this factor little or no weight. See Neely v. Commissioner, T.C. Memo. 1978-18. 6. Integral Part of Business
PPCI is in the business of distributing hair care products. PPCI's sales representatives are PPCI's key connection with its customers. This factor supports a finding that petitioner was an employee of PPCI. 7. Relationship Parties Believed They Had Created
We have no doubt that the parties believed that an employer-employee relationship was established. PPCI treated petitioner as an employee. PPCI withheld Federal income taxes and FICA taxes from petitioner's biweekly commission checks. Moreover, petitioner did not pay any self-employment taxes for 1990. The withholding of taxes by PPCI on behalf of petitioner is consistent with a finding *672 that petitioner was an employee of PPCI. See Packard v. Commissioner, 63 T.C. 621, 632 (1975). Petitioners did not introduce any evidence that PPCI considered petitioner Barbara D. Lewis an independent contractor. Testimony of a representative of PPCI could have easily established PPCI's belief as to the nature of petitioner's employment relationship. Petitioners have the burden of proving respondent's determination incorrect. Rule 142(a). Failure of a party to introduce evidence which would be favorable to her gives rise to the presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). 8. Provision of Employee Benefits
Petitioner did receive some employee benefits from PPCI. She participated in the company's group health insurance plan during the entire period she sold PPCI products. She also received some commissions while she was on her first maternity leave. She continued to work a limited number of hours for particular clients during that leave. The commissions which *673 she received during her maternity leave were based on all of the sales within her sales territory and not upon the accounts which she serviced during that time period. PPCI also paid for her overnight expenses when she stayed out of town for a sales show. Receipt of employee benefits is an important factor in determining if an employer-employee relationship exists. Packard v. Commissioner, supra at 632. PPCI provided petitioner with some employee benefits, so this factor supports a finding that petitioner was an employee of PPCI. In sum, the factors discussed above demonstrate that petitioner was an employee of PPCI during 1990. Because petitioner was an employee, she can only deduct expenses related to her PPCI sales activities as miscellaneous itemized deductions under section 67(a). Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩