# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2281

_____

| | | |
|---|---|---|
| Ron and Judy Kirk, doing business as Iowa Pedigree, | * * * | |
| Appellees, | * * | Appeal from the United States District Court for the |
| v. | * * | Western District of Missouri. |
| Gary Harter, | * * | |
| Appellant. | * | |

_____

Submitted: January 14, 1999

Filed: August 27, 1999

_____

Before WOLLMAN[1] and FLOYD R. GIBSON, Circuit Judges, and TUNHEIM,[2] District Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota, sitting by designation.

In this copyright dispute, the district court entered judgment on a jury verdict in favor of Iowa Pedigree. Because we find that Harter was an independent contractor, we reverse.

## I.

Iowa Pedigree, a partnership owned by Ron and Judy Kirk, is in the business of assisting dog breeders and brokers to comply with American Kennel Club (AKC) and United States Department of Agriculture (USDA) licensing and registration requirements. Iowa Pedigree sought to develop computer software that would aid its customers in conforming to these regulations.

In 1989, Ron Kirk learned from a kennel owner that Harter had written a computer program that allowed the owner to track information on the dogs bred and sold by the kennel. In May of 1989, Kirk asked Harter to develop a computer program for Iowa Pedigree to assist dog brokers with AKC and USDA regulations. Harter agreed and eventually helped Iowa Pedigree develop the software.

For the next six years, Harter worked on a variety of projects for Iowa Pedigree. He developed several computer programs, maintained the computers at Iowa Pedigree, and serviced the software of Iowa Pedigree's clients. In 1996, several customers terminated their relationship with Iowa Pedigree and began receiving services directly from Harter. Iowa Pedigree then sued Harter for copyright infringement, misappropriation of trade secrets, and tortious interference with business expectancies.

The jury found that Harter was liable for copyright infringement. In addition, the jury found that Harter had misappropriated Iowa Pedigree's trade secrets in violation of Iowa law and that he had tortiously interfered with the business expectancies between Iowa Pedigree and its customers. In addition to awarding compensatory damages, the jury awarded punitive damages in the amount of $50,000.00. The district

court entered judgment against Harter, but set aside the verdict in favor of Iowa Pedigree on the claim of misappropriation of trade secrets.

## II.

The central issue in this appeal is whether Iowa Pedigree is the sole owner of the copyrights to the computer programs. The Copyright Act provides that an employer is the author when an item is considered a work made for hire. See Community for Creative Non-Violence v. Reid, 490 U.S. 730, 743-44 (1989); 17 U.S.C. § 201(b). See also 17 U.S.C. § 101 (defining work made for hire as "a work prepared by an employee within the scope of his or her employment"); MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 775-76 (3rd Cir. 1991) (explaining work made for hire doctrine). Whether the computer programs in this case are works made for hire turns on the nature of the employment relationship between Iowa Pedigree and Harter. See e.g. Siebersma v. Vande Berg, 64 F.3d 448, 449 (8th Cir. 1995) (explaining the significance of employment status in a copyright ownership case involving a computer programmer).

To determine the employment status of an individual under the copyright statutes when there is no written employment agreement, we look to the common law rules of agency. See Reid, 490 U.S. at 750-51. In applying the common law test, we examine several factors to determine employment status, including "the hiring party's right to control the manner and means by which the product is accomplished." See id. at 751. Other factors to be taken into account include

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the

hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52 (citations omitted). No single factor is determinative of employment status. See id. at 752.

"[W]hether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts of each case." Berger Transfer & Storage v. Central States, 85 F.3d 1374, 1377 (8th Cir. 1996) (quoting Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 571 (8th Cir. 1984)). See also Alford v. United States, 116 F.3d 334, 336 (8th Cir. 1997); Birchem v. Knights of Columbus, 116 F.3d 310, 312 (8th Cir. 1997). In a court-tried case, the findings regarding each of the underlying common-law factors are reviewed under the clearly erroneous standard of review, with the ultimate question of employment status being reviewed de novo. Berger v. Transfer & Storage, 85 F.3d at 1377-78 (citing Dole v. Snell, 875 F.2d 802, 805 (10th Cir. 1989)). In the present case, however, the question of Harter's employment status was submitted to the jury. Because the evidence was largely undisputed, we need not dwell on the degree of deference that should be shown to the jury's findings regarding the Reid factors, for we conclude that the evidence compels a determination that Harter was in fact an independent contractor and not an employee, with the result that he was the owner of the computer program and thus not liable for copyright infringement.

Throughout Harter's relationship with Iowa Pedigree, his pay was reported to the Internal Revenue Service by Iowa Pedigree on form 1099 as payment to an independent contractor. Harter reported the pay as self-employed income. Iowa Pedigree did not withhold any portion of Harter's pay for income taxes, nor did it withhold social security taxes. Harter received no medical, retirement, or vacation benefits while working for Iowa Pedigree. Iowa Pedigree's failure to provide employment benefits or withhold any payroll taxes is probative evidence of Harter's

status as an independent contractor, as "every case since <u>Reid</u> that has applied the test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes." <u>Aymes v. Bonelli</u>, 980 F.2d 857, 863 (2d Cir. 1992); <u>see also</u> <u>Birchem</u>, 116 F.3d at 313 (stating that financial relationship, including tax treatment, is highly probative of employment status).

Moreover, Harter received payments on an irregular basis. For example, in August of 1991, he was paid on the 12th, 17th, and 19th, whereas he did not receive any payment from December 19, 1989, to July 11, 1990. Harter did not use a time clock or submit the number of hours he worked to Iowa Pedigree, except in the form of an invoice. This absence of regular, periodic payments is an indicia of independent contractor status. <u>See</u> <u>MacLean</u>, 952 F.2d at 777.

In addition, throughout his six-year relationship with Iowa Pedigree, Harter continued to engage in computer consulting with other companies, a factor suggesting that he was an independent contractor. <u>See</u> <u>Berger Transfer</u>, 85 F.3d at 1380 (stating truck owner-operators driving for multiple companies was key in finding that they were independent contractors); <u>Aymes</u>, 980 F.2d at 862 (finding computer programmer highly skilled); <u>Maclean</u>, 952 F.2d at 777 (same).

In 1992, Harter hired a second programmer, Dennis Blazek, to work on a particular project. Harter's 1992 tax return shows that payments made to Blazek were reported as subcontractor expenses, a fact indicative of Harter's status as an independent contractor. <u>See</u> <u>Reid</u>, 490 U.S. at 751-52 (hiring and paying assistants is relevant to determining employment status).

Conversely, some factors support a finding that Harter was an employee of Iowa Pedigree. Harter traveled extensively with Ron Kirk throughout the six-year period. The two visited clients of Iowa Pedigree to "de-bug" their computer systems. Harter attended several trade shows with Kirk, where he wore an Iowa Pedigree "uniform"

and worked in the Iowa Pedigree booth, where he would answer questions regarding the services provided by Iowa Pedigree. On these trips, Iowa Pedigree paid for Harter's expenses. Each of these facts favors a finding that Harter was an employee. See Aymes, 980 F.2d at 863 (stating that right of the hiring party to assign projects is strong evidence of employee status, although assignment of additional duties is not necessarily inconsistent with an independent contractor relationship).

Although Ron Kirk had no computer skills, he directed the projects through his knowledge of the AKC and USDA compliance requirements. In addition, he directed the hours and days that Harter would work, a fact that suggests an employer-employee relationship. See Reid, 490 U.S. at 752 (fact that hiring organization directed sculptor's work favored finding hiring organization controlled the project); Short, 729 F.2d at 574 (stating that a workers ability to determine when and how long he would work favored finding that he was an independent contractor).

Although Harter did some work at home, he also spent a significant amount of time in the Iowa Pedigree offices. The six-year duration of the relationship, and Iowa Pedigree's furnishing of equipment also favor finding an employment relationship. See NLRB v. United Ins. Co. of America, 390 U.S. 254, 259 (1968) (finding permanent relationship favored status as employee); Aymes, 980 F.2d at 864 (stating that work done at company office supports employee status, but had negligible weight when computer programmer needed access to hiring party's computer hardware).

On balance, we conclude that the factors which might support a conclusion that an employer-employee relationship existed are insufficient to overcome the evidence that Harter was an independent contractor. Iowa Pedigree did not treat Harter as an employee for tax purposes and did not pay him traditional employee benefits. Furthermore, Harter was highly skilled, continued to consult with other companies, and on at least one occasion unilaterally hired a subcontractor. We find the Second Circuit's reasoning in Aymes persuasive, and we therefore conclude that Harter was

an independent contractor. See Aymes, 980 F.2d at 862-64 (finding that the skill, tax treatment, and employee benefit factors compelled a finding that a computer programmer was an independent contractor). Thus, as owner of the computer programs he designed for Iowa Pedigree, Harter cannot be held liable for copyright infringement.

The jury was instructed that to find for Iowa Pedigree on its claim for tortious interference, each of the following elements must have been shown by the weight of the evidence:

> *First,* plaintiffs had contracts or business expectancies with customers which were terminated by the customers,

> *Second,* defendant caused the customers to terminate their relationships with plaintiffs, and

> *Third,* defendant did so intentionally and without justification or excuse, and

> *Fourth,* plaintiffs were thereby damaged.

Jury Instruction No. 30.

We will affirm the jury's finding of tortious interference if it is supported by substantial evidence. See Central Telecommunications, Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 732 (8th Cir. 1986). Liability for tortious interference with business relations may not be sustained based "upon speculation, conjecture, or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis." Mueller v. Abdnor, 972 F.2d 931, 938 (8th Cir. 1992).

We conclude that there is insufficient evidence to support a finding that Harter tortiously interfered with Iowa Pedigree's business expectancies. The owners of the former customers testified that they were unhappy with the continually rising prices at

Iowa Pedigree, that they were uncomfortable with Iowa Pedigree because they believed that Ron Kirk was divulging information regarding their businesses, and that they were unhappy with the manner in which Kirk demanded payment for services. In addition, the former customers testified they had solicited Harter and that he had not pursued them. Accordingly, the judgment entered on this claim must be set aside.

Because Harter was an independent contractor and thus not liable for copyright infringement, and because the claim of tortious interference with business relations is not supported by the evidence, no basis remains for affirming the award of punitive damages. Accordingly, it is set aside.

The judgment is reversed, and the case is remanded to the district court for entry of judgment dismissing the complaint.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.