Kathleen PECK, Plaintiff,

v.

DEMOCRAT AND CHRONICLE/GAN-NETT NEWSPAPERS and John Doe, also known as Tony, the Warehouse Manager, as Aider and Abetter, Defendants.

No. 99–CV–6603 CJS(F).

United States District Court,
W.D. New York.

Aug. 15, 2000.

Wendy Basar, Duke Law Firm, PC, Lakeville, New York, for plaintiff.

J. Nelson Thomas, Christian D. Hancey, Nixon Peabody LLP, Rochester, NY, for defendants.

DECISION and ORDER

SIRAGUSA, District Judge.

This employment discrimination case, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, is before the Court on the defendant newspaper's motion for summary judgment (docket # 5) filed on April 10, 2000. For the reasons stated below, the Court grants the motion.

## I. Procedural Background

The plaintiff filed her complaint in this Court on December 8, 1999 alleging that she was employed as a carrier for the defendant newspaper on and off from 1996 through October 1997 and again from May of 1998 through July 30, 1998. She alleged that while at defendant newspaper's warehouse during working hours and during other work-related activities, she was "repeatedly, intentionally, and maliciously harassed by certain male co-workers and by her warehouse manager named Tony." Complaint at 2. The Equal Employment Opportunity Commission issued a "right to sue" letter to the plaintiff on October 21, 1999 without adjudicating her claims. Complaint, Exhibit B. As a first cause of action, the plaintiff alleges sexual harassment and alleges further that certain supervisory employees of the defendant newspaper failed to take corrective or remedial action to stop the harassment. As a second cause of action she alleges battery, presumably under New York common law. As a third cause of action, she alleges intentional infliction of emotional distress and as a fourth cause of action she alleges negligent infliction of emotional distress, again, presumably under New York common law.

The defendant newspaper filed an answer on January 18, 2000, denying most of the allegations underlying the plaintiff's causes of action and raising eight affirmative defenses, fourth of which was, "Defendant is not an employer of plaintiff." Answer at 3. Defendant newspaper argues in its motion that since it was not the plaintiff's employer, then Title VII does not apply.

It does not appear from the Court's review of the docket that defendant Tony, the Warehouse Manager, has appeared or answered, nor does there appear to be any motion to dismiss the case against him. Thus, all references to "the defendant" in this decision and order will refer only to the defendant newspaper, the Democrat and Chronicle or Gannett Newspapers, and not to the individual defendant, John Doe also known as Tony, the Warehouse Manager, as Aider and Abetter.

The defendant filed a statement of facts to which it contends there is no genuine issue to be tried. The plaintiff filed a statement of material facts as to which the plaintiff contends there *is* a genuine issue to be tried. The primary issue under consideration is whether the plaintiff is an employee of the defendant. Before reviewing the factual circumstances touching on that issue, the Court will address the appropriate legal standards.

## II. Discussion

### A. Summary Judgment Standard

The law on summary judgment is well settled. The Court may only grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, to defeat a motion for summary judgment, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact, *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir.1991), or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. Fed.

R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions by the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire, Ins.*, 804 F.2d 9 (2d Cir.1986).

The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment may not create an issue of fact by submitting an affidavit opposing a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Hayes v. New York City, Department of Corrections*, 84 F.3d 614 (2d Cir.1996). It is equally well settled that in diversity actions Federal Court sits and operates as if it were a State court, and must apply State substantiative law. *Smith v. Bell Sports, Inc.*, 934 F.Supp. 70 (W.D.N.Y. 1996). However, although there are state law claims in this suit, none is pertinent to this motion.

## B. The Plaintiff's Title VII Cause of Action

·The plaintiff makes one civil rights claim for hostile environment sexual harassment. A plaintiff in a civil rights action has the burden of proof and must ultimately establish, by a preponderance of the evidence, that the defendant harassed her because of her gender. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As the Second Circuit has held,

> To prevail on a hostile environment claim under Title VII the complaining employee must prove that the harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Vinson*, 477

U.S. at 67, 106 S.Ct. at 2405 (*quoting Henson*, 682 F.2d at 904). The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987). Whether the sexual harassment constitutes a Title VII violation is determined from the totality of the circumstances. *See Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986) (racial harassment); *Henson*, 682 F.2d at 904. *Accord* 29 C.F.R. § 1604.11(b) (1988).

*Carrero v. New York City Housing Authority*, 890 F.2d 569, 577–78 (2d Cir.1989).

## C. Independent Contractor vs. Employee

■ In the case at bar, however, the preliminary issue raised in the motion is whether the plaintiff was employed by the defendant, or was an independent contractor. If the latter, then the Civil Rights Act would not apply, the plaintiff would be unable to bring a cause of action under that law. *See O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997). Title VII of the Civil Rights Act of 1964 defines "employee" as "an individual employed by an employer. . . ." 42 U.S.C. § 2000e(f). The case law holds that when a statute defining "employee" does not helpfully define it, then Congress must intend to incorporate the well settled common law definition of the term. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Of the three common law tests available to determine whether the plaintiff qualifies as an employee, the Second Circuit, following *Darden,* adopted the common law agency test in *Frankel v. Bally, Inc.*, 987 F.2d 86 (2d Cir.1993). That traditional test "arises out of the common law of agency and focuses primarily on the 'hiring party's right to control the manner and means by which the product is accomplished.'" *Frankel,* 987 F.2d at 89 (quoting *Community For Creative Non–Violence v. Reid,*

490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). In its opinion, the court then listed a non-exhaustive list of factors to be considered in this inquiry. They are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistance; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Reid,* 490 U.S. at 751–52, 109 S.Ct. 2166 (*citing* Restatement (Second) of Agency § 220(2) (1958)) (footnotes omitted). Keeping in mind that no one factor is dispositive, the Court will analyze the facts presented by the defendant to support its argument that the plaintiff was an independent contractor and contrast those facts with the ones advanced by the plaintiff to show the contrary.

### 1. Source of instrumentalities and tools

The parties' papers clearly reveal that the plaintiff used her own car, was required to provide proof of proper car insurance to the defendant, purchased the papers she delivered from the defendant and received newspaper mailboxes and stakes from the defendant. The defendant also provided undisputed proof that the plaintiff purchased her own rubber bands and plastic newspaper bags used for delivery. Ainsworth aff. at 2. This factor weighs in the defendant's favor.

### 2. Control over the plaintiff's work

The defendant claims that the plaintiff exercised discretionary control over the manner and means by which she provided newspaper carrier services. The defendant alleges, and the plaintiff does not dispute, that the plaintiff controlled the order, timing and means of delivering her newspapers. In contrast, the plaintiff states that the defendant controlled her delivery schedule. For example, in her affidavit, Ms. Peck stated that she had to wait in the defendant's warehouse until the papers were delivered and then was required to have all newspapers delivered to her customers every morning by 5 o'clock on weekdays, 7 o'clock on Saturdays, and 8 o'clock on Sundays. Peck aff. at 3, 4. Even if delivery of the newspapers to the warehouse occurred after 5:00 a.m., the plaintiff was still required to deliver them to her customers. *Id.* at 4. Further, Ms. Peck states in her affidavit that she was given a brand-new manifest every night. The manifest listed each and every point where she was required to deliver a newspaper. Delivery points were added to and deleted from her manifest on almost a daily basis. Peck aff. at 2. She had no discretion over whether to accept a new delivery point. *Id.* In addition, she was not allowed to stop delivering newspapers to a customer without the defendant's permission, even if that customer did not pay for delivered papers. *Id.* The plaintiff's account with the defendant would be eventually credited for the non-paying customer once the defendant gave its permission to stop delivery to that customer. *Id.*

Two factual disputes do surface at this point. The defendant claims that it did not supervise the plaintiff's daily activities and that she did not report to any of the defendant's employees or attend any newspaper meetings, nor was she required to comply with any of the defendant's employment rules or policies. Ainsworth aff. at 2; Defendant's Memorandum at 10. In contrast, however, Ms. Peck states in her affidavit,

> [m]y work at the Democrat and Chronicle was supervised by district managers. Customers who had complaints would call the Democrat and Chronicle. The

defendant reported all complaints that were logged on a board that was kept in the Lakeville warehouse. I was charged with an error for every complaint that the Democrat and Chronicle received against me. I would have been fired if I were charged with a certain amount of errors.

Peck aff. at 2. Viewing the evidence, as the Court must, in the light most favorable to the party opposing summary judgment, the Court finds that the defendant did supervise the plaintiff's delivery work, performed quality control and evaluated her performance by directly taking complaints from the plaintiff's delivery customers and relaying them to the plaintiff. Yet, as the defendant points out in its Memorandum of Law in Further Support of Its Motion for Summary Judgment ("Reply Memorandum"), at 6 n. 4, tallying customer complaints does not rise to the level of day to day supervision an employer exercises over its employees. This factor, therefore, weighs in the defendant's favor.

The second factual dispute involves whether the plaintiff was free to solicit subscriptions and, thereby, earn a commission for the new subscriptions. In her affidavit, Ms. Peck states that at first, she was able to solicit subscriptions, but during the time she worked for the defendant, she was no longer allowed to solicit new customers and all new customers were solicited exclusively by telemarketers working for the defendant. Peck aff. at 2–3. In contrast, the defendant submitted an affidavit by Nancy J. Beeley, circulation division manager for the defendant, who states that all carriers are permitted to solicit new subscribers and that the defendant provides them with forms to facilitate new subscriptions. Beeley aff. at 1–2 & Exhibit A. This clearly shows a factual dispute; however, since the common law agency test makes no one fact controlling, the Court finds it is not material and will, consistent with the law, view the evidence most favorably to the plaintiff. The Court finds that this fact is relevant to determin-ing the "hiring party's right to control the manner and means by which the product is accomplished," *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), and weighs in the plaintiff's favor.

The Court also notes that it is undisputed that the plaintiff could not set prices for subscriptions to the newspaper and did not handle payments for the majority of newspaper customers. Peck aff. at 3. This is not one of the factors addressed in the common law agency test as quoted in *Frankel v. Bally, Inc.*, 987 F.2d 86, 89. The Court finds that this fact is indeterminate.

### 3. The plaintiff's ability to hire assistance

The defendant also points out that the plaintiff could hire assistance without seeking approval from the defendant. She could even choose to subcontract out her entire route. Ainsworth aff. at 2; Defendant's Memorandum at 10. The plaintiff does not address this in her affidavit or statement of facts, but the latest contract, dated October 17, 1996, attached to the defendant's Ainsworth affidavit as Exhibit A ("Contract"), at paragraph four states, "[t]he [plaintiff] agrees to engage a substitute, if for any reason the [plaintiff] cannot or chooses not to distribute the Newspaper on any given day." However, the Contract also states that the plaintiff does not own the delivery route and has no property interest in it and cannot offer it for sale. Contract at paragraph 7. Further, she was not permitted to transfer or assign her obligations under the contract without written consent from the defendant. *Id.* at paragraph 8. The Court finds that the plaintiff's contractual obligation to obtain a substitute in the event she was unable to deliver the newspapers weighs in favor of the defendant's argument that she was an independent contractor.

### 4. The defendant's ability to assign additional tasks

The defendant also argues that it could not assign the plaintiff additional projects.

Defendant's Memorandum at 10. In her affidavit, Ms. Peck stated that she performed additional work for the defendant, apparently under separate oral agreements and for additional compensation. *See* Peck aff. at 3. The additional duties consisted of "shortage runs" and "bulk-drops." *Id.* at paragraphs 16 & 17. She was also required to insert additional advertising papers or product samples in her papers prior to delivery from time to time and was compensated for those tasks per the contract. Ainsworth aff. Exhibit A, at paragraph 2. Additionally, in her affidavit, Ms. Peck stated that, "I was also required to deliver Sunday inserts separately during the week. I did not get paid any additional compensation for delivering the inserts." Peck aff. at 4. She further stated, "I was also required to put up boxes at the residence of each customer that I delivered newspapers to. I was not given any additional compensation for this work. The defendant supplied me with a tube and a stake. I was also required to repair and maintain the boxes on my route." *Id.* Thus, it appears the plaintiff was required to perform some tasks in addition to simply delivering the papers she purchased from the defendant, tasks which were not specified in the Contract. This factor favors the plaintiff's position.

### 5. The plaintiff's ability to work elsewhere

The defendant next addresses the plaintiff's right, under the contract, to work elsewhere, including for the defendant's competition. Defendant's Memorandum at 11. Though the plaintiff did not address this fact in her affidavit, the Court notes that the Contract required her to "use best efforts to promote and extend the circulation of the newspaper within [her area of primary responsibility]." Contract at paragraph 1. It also prohibited her from inserting anything in the delivered newspapers without the express permission of the defendant's vice president of circulation. *Id.* at paragraph 4. Thus, it appears she could work for the defendant's competition, but probably not in the same territory she covered for the defendant. The Court finds this factor is indeterminate.

### 6. The location of the plaintiff's work

The defendant argues that the plaintiff performed her work not on the defendant's premises, but on her own route and was in the defendant's warehouse only briefly to pick up her papers. Defendant's Memorandum at 11. The plaintiff's affidavit is unclear as to the amount of time spent in the warehouse, but makes it clear that she not only had to pick up her papers there, but also had to wait in line to pick up her delivery manifest. Also, it was in the warehouse that the plaintiff was allegedly subjected to sexual harassment by the defendant's warehouse manager and other employees. This factor is, therefore, indeterminate.

### 7. The plaintiff's ability to set her own working hours

The defendant points out that the plaintiff was free to decide when and where to work. The defendant argues that, "though Ms. Peck agreed to deliver all papers by 6:00 a.m., she was free to start her route at whatever time before 6:00 a.m. she found to be most convenient." Defendant's Memorandum at 11 (citation omitted). Ms. Peck already stated in her affidavit that she was required to deliver weekday papers by 5:00 a.m., but even if the delivery time was actually 6:00 a.m., Ms. Peck stated that "there were several occasions on which the delivery truck did not arrive at the Lakeville warehouse until after 5:00 a.m." Peck aff. at 4. No one has addressed when the papers regularly arrived at the warehouse; thus, it appears that several times, the plaintiff had only one hour to make her deliveries. Since the Court is also unaware of the number of deliveries she had to make, or the size of her route, it cannot conclude whether this factor weighs in favor of the plaintiff's or the defendant's argument on the issue of whether the

plaintiff was an independent contractor. This factor is, therefore, indeterminate.

### 8. The defendant's tax, benefit and payroll treatment of the plaintiff

The defendant states that the plaintiff was not on the newspaper's payroll, did not receive employee benefits and was treated as an independent contractor for all tax purposes. Defendant's Memorandum at 12. In *Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir.1992), these were highly probative factors in the court's conclusion that one party was an independent contractor. Indeed, the Second Circuit characterized them as "virtual admissions" by the defendant in that case that the plaintiff was an independent contractor. *Id.* In *Aymes,* on which the defendant relies, the defendant was the party asserting that the plaintiff was an employee, notwithstanding that the defendant in that case "did not pay a share of Aymes's social security taxes and did not withhold federal or state income taxes." *Id.* The defendant in this case has acted consistently with its current position before the Court. The plaintiff has also not disputed that she was not on the defendant's payroll, that the defendant did not pay a share of the plaintiff's social security taxes and that the defendant did not withhold state or federal taxes. Ainsworth aff. at 3. The plaintiff does allege that the defendant, "provided employee benefits to [her]." Plaintiff's Statement of Material Facts at 2 (no such allegation appears in Ms. Peck's affidavit, however). Apparently to answer this claim, the defendant filed an affidavit from Patricia C. Rissberger, manager of training and customer service programs for the defendant, who stated that the plaintiff did not participate in any employee benefits. Rissberger aff. at 1. Ms. Rissberger also stated in her affidavit that the plaintiff was offered the ability to purchase a voluntary accident insurance plan which was not endorsed, administered, or subsidized by the defendant. Therefore, these factors weigh heavily in favor of the defendant's position.

### 9. The defendant's business

The defendant also argues that the plaintiff's job as a carrier was not a part of the defendant's regular business. The Court disagrees. The facts in this case clearly point to the control over which defendant exercised in the distribution of its newspapers and, unlike the postal employee whom the defendant raises in a hypothetical argument in its memorandum, at 14, the plaintiff delivered newspapers exclusively for the defendant during the morning hours. However, as the defendant also points out, the case law does not give significant weight to this factor. *See Aymes v. Bonelli*, 980 F.2d 857, 863 (2d Cir.1992). Thus, this factor is indeterminate.

### 10. The length of the relationship and terms of the Contract

Last, the defendant argues that the plaintiff's relationship with the defendant was not long term and the provisions of the Contract specifically spelled-out that she would be treated as an independent contractor. The proof shows that the plaintiff signed numerous separate contracts as an independent carrier or independent hauler and that each of the contracts contained language indicating that the plaintiff was not to be considered an employee of the defendant. The Court agrees that these factors weigh in favor of the defendant's position.

After reviewing the facts presented by the parties, the Court concludes that the plaintiff was an independent contractor. Clearly the parties considered this to be their relationship throughout the terms of the various contracts they executed. The defendant never paid the plaintiff as an employee, never included her in its benefit plans and issued an IRS Form 1099 to show her earnings instead of an IRS Form W2. Although the parties have not submitted tax returns, the proof in evidentiary form now before the Court shows the parties intended to treat the

plaintiff as an independent contractor and conducted their relationship, for the most part, in accord with that status. It is, of course, unfortunate that the defendant's employees at the warehouse (if, indeed, they were employees of the defendant) may have sexually harassed the plaintiff, however, Congress chose not to apply Title VII protection to independent contractors.

## III. REMAINING CAUSES OF ACTION

Having determined that there is no federal question of jurisdiction, the Court now turns its attention to the remaining state court causes of action.

In this case, jurisdiction was predicated on Title VII of the Civil Rights Act of 1964 under 42 U.S.C. § 2000e–5(f)(3). Complaint at 1. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the remaining state common law causes of action, but may decline to exercise that jurisdiction after dismissing the federal question cause of action. *See* 28 U.S.C. § 1367(c)(3). Now that the Court has granted the defendant judgment on the only cause of action under Title VII, the Court will exercise its discretion and decline to exercise jurisdiction over the remaining causes of action.

## IV. Conclusion

In view of the foregoing, the Court grants the defendant's motion for summary judgment (document # 11) and dismisses the first cause of action. Further, the Court declines to exercise jurisdiction over the remaining claims.

IT IS SO ORDERED.