Bashar LUTFI, M.D., Plaintiff–Appellant,

v.

BRIGHTON COMMUNITY HOSPITAL ASSOCIATION, d/b/a Platte Valley Medical Center, Inc.; and John Hicks, individually, as Chief Executive Officer of Platte Valley Medical Center, and as a member of the Board of Platte Valley Medical Center, Defendants–Appellees.

No. 00CA0245.

Colorado Court of Appeals, Div. III.

May 10, 2001.

Rehearing Denied July 26, 2001.

Certiorari Denied Feb. 4, 2002.

Leavenworth & Tester P.C., Sander N. Karp, Julie C. Berquist, Glenwood Springs, CO; Antonio Bates Bernard, P.C., Brian E. Bates, Denver, CO, for Plaintiff–Appellant.

Grund & Breslau, P.C., John W. Grund, Denver CO; Kutak Rock, LLP, Melvin B.

Sabey, Denver, CO, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

In this dispute involving his removal from a schedule of physicians providing services in a hospital emergency medical service department (ER), plaintiff, Bashar Lutfi, M.D., appeals the summary judgment in favor of defendants, Platte Valley Medical Center, Inc. (the hospital), and John Hicks, the hospital's chief executive officer. We affirm.

The hospital contracted with Platte Valley Emergency Physicians, Inc. (PVEP), to provide physicians to cover the hospital's ER. That contract contained a provision stating that the hospital could require PVEP to remove a physician from the ER. Plaintiff entered into an arrangement as an independent contractor with PVEP under which PVEP scheduled plaintiff to work in the ER.

While plaintiff was working in the ER, a patient with lacerated fingers came in. Although plaintiff denies it occurred, the patient claimed that plaintiff made him wait an inordinate amount of time for treatment, was rude to him, and finally refused him treatment. Subsequently, Hicks contacted PVEP and required, pursuant to the contract between the hospital and PVEP, that plaintiff be removed from the ER rotation.

Asserting racial and national origin discrimination, plaintiff brought this action alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994 & 1998 Supp.), and also under § 42 U.S.C. § 1981 (1994 & 1998 Supp.). He also asserted claims for tortious interference with his employment agreement with PVEP, breach of agreement contained in the hospital's bylaws, breach of duty of good faith and fair dealing, breach of employment contract, and promissory estoppel. Only the tortious interference and bylaws claims were asserted against Hicks. The trial court granted defendants' motion for summary judgment as to all of plaintiff's claims for relief. This appeal followed.

 Summary judgment is appropriate only when the pleadings and supporting documents demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Our review of an order granting or denying a motion for summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). We conclude that the summary judgment was appropriate here.

## I. Title VII

Plaintiff first contends that the trial court erred in dismissing his national origin discrimination claim under Title VII on grounds that he was an independent contractor. He asserts that he need not establish a direct employer-employee relationship with the hospital to establish liability under Title VII, and that he is an employee for Title VII purposes. We are not persuaded.

### A. Title VII Does Not Apply to Independent Contractors

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

 There must, however, be some connection with an employment relationship for Title VII protections to apply. Thus, Title VII protects employees, but does not protect independent contractors. *Adcock v. Chrysler Corp.,* 166 F.3d 1290 (9th Cir.1999). Under Title VII, "employee" is defined as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Plaintiff relies upon *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973), and other cases for the proposition that a nonemployee independent contractor may bring a claim under Title VII.

In recent years, however, federal courts have almost uniformly ruled that a person who is an independent contractor cannot bring a Title VII claim. We find the reasoning of those decisions persuasive. *See Schwieger v. Farm Bureau Insurance Co.,* 207 F.3d 480 (8th Cir.2000); *Adcock v.*

*Chrysler Corp., supra; Zinn v. McKune,* 143 F.3d 1353 (10th Cir.1998); *Cilecek v. Inova Health System Services,* 115 F.3d 256 (4th Cir.1997)(physician under contract to provide emergency medical services was an independent contractor rather than an employee and thus could not sustain a Title VII action); *Alexander v. Rush N. Shore Medical Center,* 101 F.3d 487 (7th Cir.1996)(physician could not bring a Title VII claim alleging the hospital's revocation of his staff privileges constituted unlawful discrimination absent proof of an employment relationship, which did not exist because physician was independent contractor); *Diggs v. Harris Hospital–Methodist, Inc.,* 847 F.2d 270 (5th Cir.1988)(no Title VII claim was proper because independent contractor physician failed to prove existence of an employment relationship with which hospital allegedly interfered); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.1982); *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir. 1979); *Peck v. Democrat & Chronicle/Gannett Newspapers,* 113 F.Supp.2d 434 (W.D.N.Y.2000); *Hannon v. Avis Rent A Car System, Inc.,* 107 F.Supp.2d 1256 (D.Mont.2000). *See also* 1 A. Larson & L. Larson, *Employment Discrimination* § 5.22 (1991).

Some state courts also have recognized that Title VII applies to employees and not to independent contractors. *See, e.g., Ostrander v. Farm Bureau Mutual Insurance Co.,* 123 Idaho 650, 851 P.2d 946 (1993); *Marquis v. City of Spokane,* 130 Wash.2d 97, 922 P.2d 43 (1996).

Further, the cases relied upon by plaintiff are distinguishable. In *Sibley Memorial Hospital v. Wilson, supra,* the court recognized that in a sex discrimination claim, even in the absence of an employment relationship, a hospital had brought itself within the strictures of Title VII by determining that a female patient should not have a male nurse and thus blocking access of a male private duty nurse to work for a female patient. In *Christopher v. Stouder Memorial Hospital,* 936 F.2d 870 (6th Cir.1991), a hospital refused to grant a nurse privileges to work in its facility as a private scrub nurse. Because the hospital had allegedly interfered with her access to employment, the nurse stated a claim under Title VII, even though she was not an employee. The court noted she was not an independent contractor with respect to the hospital. In *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291 (11th Cir.1988), an anesthesiologist from Egypt was dismissed from a residency program based on adverse evaluations from a director of a training program and the hospital's decision to bar him from the hospital. The hospital's actions affected the plaintiff's employment with an employer other than the defendant, and the plaintiff stated a claim under Title VII. In *Pardazi v. Cullman Medical Center,* 838 F.2d 1155 (11th Cir.1988), an Iran-educated medical practitioner was employed by a professional corporation, conditioned upon his becoming a member, with staff privileges, of the hospital. Although he was appointed to the hospital staff, his observation period was extended from four months to one year. Accepting that the plaintiff was not an employee, the court nonetheless concluded that the hospital could be held liable under Title VII if it interfered with the plaintiff's employment opportunities with the professional corporation.

However, there is no indication in those cases of an agreement of the type between the hospital and PVEP requiring removal upon the hospital's request. Here, the hospital acted in accordance with its contract with PVEP. Further, as discussed more fully below, the hospital's action did not affect plaintiff's employment status with PVEP, because plaintiff here was an independent contractor with respect to PVEP, not a PVEP employee. Additionally, those cases do not contradict the proposition that Title VII does not protect independent contractors. *See, e.g., Spirides v. Reinhardt, supra* (decision from the same circuit as *Sibley Memorial Hospital v. Wilson, supra*). Each of those cases is also distinguishable in that they involved defendants who were in a position to influence significantly the plaintiffs' respective employment opportunities. Here, by contrast, there is no evidence that the hospital interfered with plaintiff's employment opportunities with other parties.

We thus conclude that to prevail under Title VII, plaintiff must establish that he was not an independent contractor.

### B. Plaintiff Was an Independent Contractor

■ To determine whether a person is an employee, the Tenth Circuit Court of Appeals has concluded that the skeletal definitions of "employer" and "employee" provided in 42 U.S.C. §§ 2000e(b) and 2000e(f) should be fleshed out by applying common law agency principles to the facts and circumstances surrounding the working relationship of the parties. Although the main focus of this inquiry is whether and to what extent a putative employer has the right to control the means and manner of the worker's performance, other factors inform the analysis, including:

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Zinn v. McKune, supra,* 143 F.3d at 1357 (quoting *Lambertsen v. Utah Department of Corrections,* 79 F.3d 1024, 1028 (10th Cir. 1996)).

■ The inquiry requires us to look to the totality of circumstances surrounding the working relationship between the parties; no single factor is determinative. *Zinn v. McKune, supra.*

Here, the contract between the hospital and PVEP expressly provides that "nothing in this Agreement is intended nor shall be construed to create between Hospital and Contractor an employer/employee relationship . . . or to allow Hospital to exercise control or direction over the manner or method by which the Physicians provide professional medical services at Hospital." This leaves no question as to the intent of the parties that no employee-employer relationship would be formed and that the hospital would have no control over the "means and manner" of plaintiff's ER work.

Plaintiff was also an independent contractor in relation to PVEP. This is shown in an agreement with PVEP, which plaintiff signed, that stated that all "physicians are independent contractors."

In addition, plaintiff had signed an agreement regarding his medical staff privileges with the hospital in which he "expressly acknowledged . . . that [he] is an 'independent contractor' with respect to Hospital and nothing in this Agreement . . . shall be construed to create . . . an employer/employee relationship."

According to the evidence submitted by defendants, PVEP provided plaintiff, a licensed professional physician, with his work assignments and scheduling at the hospital. In contrast, the hospital did not directly hire plaintiff for ER assignments and could not fire plaintiff from PVEP. If the hospital was not satisfied with a PVEP employee, its only option was to contact PVEP and require that that person be removed from the ER. Further, according to PVEP's agreement with the hospital, the hospital paid PVEP for plaintiff's services, and PVEP paid plaintiff for services rendered in the ER.

The physician who incorporated PVEP and executed its agreement with the hospital stated in his deposition that the memorandum executed by plaintiff was intended "to remind [the physicians] that they were independent contractors." Plaintiff's own expert witness also stated that "[plaintiff] was not an employee of the hospital."

In response, plaintiff emphasized portions of the agreement between PVEP and the hospital, arguing that these provisions established the hospital's control over ER physicians and that the hospital agreed to provide office space, furniture, and equipment. However, read in context, those provisions do not

support an employment relationship. We thus conclude as a matter of law that plaintiff was an independent contractor.

■ Our conclusion is consistent with the "corporate practice of medicine" doctrine articulated by the supreme court in the context of respondeat superior. Under that doctrine, a corporation such as a hospital cannot be licensed to practice medicine and thus cannot command or forbid any act by a doctor in the practice of medicine. Its relationship with a doctor providing medical services is necessarily that of an independent contractor. *Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962); *Nieto v. State*, 952 P.2d 834 (Colo.App.1997), *rev'd on other grounds*, 993 P.2d 493 (Colo.2000).

The one exception to the doctrine, which applies to physician-formed professional services corporations, is not relevant here because the hospital is not such a corporation. *See generally* § 12–36–134, C.R.S.2000; *Russell v. Pediatric Neurosurgery, P.C.*, 15 P.3d 288 (Colo.App.2000)(*cert. granted* December 18, 2000).

Accordingly, the trial court correctly granted summary judgment on plaintiff's Title VII claim.

## II. Section 1981

Plaintiff next contends that 42 U.S.C. § 1981 does not require proof that he was an "employee," as defined in Title VII, and that the trial court erred in failing to consider the implications of the hospital bylaws, which plaintiff alleges constituted a contract between plaintiff and the hospital, giving grounds for a § 1981 claim. We disagree.

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts," which includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

■ When § 1981 and Title VII claims arise from identical facts, the elements of each claim are construed in the same way. *Gwin v. Chesrown Chevrolet, Inc.*, 931 P.2d

466 (Colo.App.1996) (citing *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir. 1988)).

■ Therefore, because plaintiff's Title VII claim fails due to his independent contractor status, his § 1981 claim fails as well. *See O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248 (10th Cir.2001)(both Title VII and § 1981 require a plaintiff to establish the same prima facie elements); *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836 (11th Cir.2000)(elements of a claim of race discrimination under § 1981 are the same as those for a Title VII disparate treatment claim in the employment context); *Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir.2000)(elements are the same for employment cases stemming from § 1981 and Title VII); *Vakharia v. Swedish Covenant Hospital*, 190 F.3d 799 (7th Cir.1999).

Plaintiff, however, contends that he has a contractual relationship with the hospital based upon its bylaws. He claims this is sufficient to give rise to a § 1981 claim independent of an employee-employer relationship. We disagree.

■ Section 1981 prohibits discriminatory conduct that occurs both before and after the establishment of the contractual relationship. *See Perry v. Woodward*, 199 F.3d 1126 (10th Cir.1999)(§ 1981 centers on the protection of contractual rights; any claim brought pursuant to § 1981 must be supported by an underlying right of the employee to make and enforce contracts).

■ An employer's distribution to an employee of documents that contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued employment, may result in the employer becoming contractually bound to comply with those procedures. *See Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987); *Ferrera v. Nielsen*, 799 P.2d 458 (Colo.App.1990).

■ Here, the hospital's bylaws, under the capitalized heading "PURPOSE AND USE OF MEDICAL STAFF BYLAWS," contain the following disclaimer:

*These* Medical Staff *Bylaws* and the Rules and Regulations *do not constitute a contract* of any kind whatsoever and any Practitioner who intends that these Bylaws and the Rules and Regulations should constitute a contract must first notify the Hospital and obtain the written consent of the Board. These Bylaws and the Rules and Regulations shall be interpreted, applied and enforced within the sole discretion of the Hospital. (emphasis added)

Plaintiff presented no evidence that he attempted to notify the hospital of his intent to rely upon the bylaws as a contract. Nor is there evidence that he obtained the requisite consent of the board to do so. Thus, the bylaws did not create a contractual relationship between plaintiff and the hospital.

Therefore, plaintiff's § 1981 claim also fails under his theory that the bylaws created such a relationship.

### III. Tortious Interference

■ Plaintiff next contends that Hicks, in directing PVEP to remove plaintiff from the ER rotation, tortiously interfered with his contract with PVEP. We are not persuaded.

■ To establish tortious interference with a contract requires that: (1) the plaintiff had a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused the plaintiff to incur damages. *Telluride Real Estate Co. v. Penthouse Affiliates, LLC,* 996 P.2d 151 (Colo.App.1999).

■ Regarding the third element, the interference with a prospective business relationship must be both intentional *and improper. Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo.1995).

Here, even if plaintiff established the first and second elements of his claim, he provided no evidentiary support for the third element, intentional and improper action by Hicks.

The record reveals that Hicks directed PVEP to remove plaintiff from the emergency room rotation. However, the agreement between the hospital and PVEP states, in pertinent part, that the "Hospital may at any time, require Contractor [PVEP] to remove any of the individual Physicians from the Department coverage schedule." Thus, the hospital, through Hicks, acted properly in exercising its rights under the agreement.

Further, nothing in plaintiff's agreement with PVEP specifically precluded his removal from the ER rotation. His contract addressed only compensation, holidays, weekends, vacations, and time off.

Therefore, because plaintiff presented no evidence to establish improper action by Hicks, we conclude that the trial court properly entered summary judgment on this claim as well.

### IV. Breach of Contract

We also reject plaintiff's contention that the hospital breached its contract with him by failing to afford him the benefits and protections of its bylaws.

■ As noted above, the bylaws did not create a contractual relationship between plaintiff and the hospital. However, even if the bylaws were contractually binding upon the hospital, the protective provisions of the bylaws upon which plaintiff relies do not apply here. The procedural rights in the bylaws, which relate to physicians whose right to practice medicine the hospital denies, removes, or restricts, were not implicated by defendants' actions. Plaintiff's removal from the ER had "no effect on [plaintiff's] appointment status or clinical privileges" at the hospital.

The procedural rights contained in the bylaws apply only to an adverse recommendation, after investigation by the Medical Executive Committee (MEC), rather than to an action taken by the hospital's chief executive officer pursuant to an outside contract. Hicks' actions in the present case were exclusively controlled by the terms of the contract between the hospital and PVEP, not hospital bylaws.

### V. Good Faith and Fair Dealing

Plaintiff further contends that the district court erred in dismissing his claim for breach of the covenant of good faith and fair dealing. We are not persuaded.

Every contract contains an implied duty of good faith and fair dealing. However, this implied duty may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party; it may not contradict terms or conditions for which the parties have bargained. *Amoco Oil Co. v. Ervin, supra.*

If a claim based on the violation of an express covenant of good faith is to be recognized, such a claim is a contractual one. *Hoyt v. Target Stores,* 981 P.2d 188 (Colo. App.1998).

Here, there was no contract, express or implied, between plaintiff and the hospital concerning his work in the ER. Therefore, no claim for breach of the covenant of good faith and fair dealing may stand. *See Hoyt v. Target Stores, supra.*

Further, plaintiff's relationship with the hospital as an ER physician was based solely on the agreement between the hospital and PVEP. As discussed above, that document expressly sets forth the hospital's right to require PVEP to remove a physician from the ER schedule. Consequently, plaintiff cannot rely on the implied duty of good faith and fair dealing to circumvent terms for which PVEP and the hospital expressly bargained. *See generally Grossman v. Columbine Medical Group,* 12 P.3d 269 (Colo.App.1999)(covenant of good faith and fair dealing cannot limit an independent practice association's right to discharge an independent contractor, where terms for which independent contractor and association bargained allowed such removal).

Therefore, we conclude that summary judgment for the defendants was proper on this claim.

### VI. Promissory Estoppel

Finally, we are not persuaded by plaintiff's contention that the trial court erred in dismissing his claim for promissory estoppel based upon his reliance on the hospital's bylaws.

Under Colorado law, the elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Berg v. State Board of Agriculture,* 919 P.2d 254 (Colo.1996).

Here, plaintiff claims on appeal that he agreed to close his internal medicine practice based on his understanding that the hospital bylaws would protect him from indiscriminate termination from the ER. While plaintiff cites portions of the record in support of his claim, he points to nothing in the record that indicates his reliance upon the hospital's bylaws. The record indicates that it was not until *after* he lost his ER position that he looked to the bylaws to see if they contained provisions on physician removal that might strengthen his claim against the hospital. *See Brighton School District 27J v. Transamerica Premier Insurance Co.,* 923 P.2d 328 (Colo.App.1996)(it is not the duty of the reviewing court to search the record for evidence to support bald assertions).

Further, if an employee seeks to rely upon a written policy of the employer as the basis for a promissory estoppel claim, that employee must accept the whole of that policy. The employee may not reject those portions of the policy that may be considered unfavorable. *Floyd v. Coors Brewing Co.,* 952 P.2d 797 (Colo.App.1997), *rev'd on other grounds,* 978 P.2d 663 (Colo.1999).

Here, even if plaintiff had relied upon the bylaws, as noted above, they offer protection only under certain circumstances not present in plaintiff's situation, *i.e.,* "an adverse recommendation" by the MEC.

Accordingly, the judgment is affirmed.

NEY and NIETO, JJ., concur.