969 F.2d 1547
 1992 Copr.L.Dec. P 26,943, 23 U.S.P.Q.2d 1631
 Ed MARCO, d/b/a/ Ed Marco Photography
v.
ACCENT PUBLISHING CO., INC.; Sonia Gilbert; Leif Klein;
Lapidary Journal, Inc.; Ed Marco; Gerry J.
Elman; Frederic M. Wilf; Elman & Wilf,
P.C., Defendants on Counterclaim,
Ed Marco, d/b/a Ed Marco Photographer, Appellant.
 No. 91-1972.
 United States Court of Appeals,
Third Circuit.
 Argued June 10, 1992.
Decided July 23, 1992.
Rehearing Denied Aug. 28, 1992.
 
 Frederic M. Wilf (argued), Gerry J. Elman, Elman & Wilf, Media, Pa., for appellant.
 David M. Ginsberg (argued), Sidney Ginsberg P.C., Philadelphia, Pa., for appellees.
 Charles D. Ossola (argued), Hunton & Williams, Washington, D.C., amicus curiae for American Society of Magazine Photographers.
 Before: MANSMANN, SCIRICA and ROTH, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 We focus here on the application of agency law in the context of the "work for hire" provision of the Copyright Act of 1976. 17 U.S.C. § 101(1). We find that the district court misapplied agency principles to the facts in holding that a freelance photographer was the employee of a publisher. Because the district court premised the denial of a preliminary injunction on this erroneous conclusion of law, we will vacate the district court's judgment and remand for further consideration.
 
 I.
 
 2
 The district court has exclusive subject matter jurisdiction of this action arising under the Copyright Act. 28 U.S.C. § 1338(a). We have appellate jurisdiction to review the district court's refusal to grant a preliminary injunction. 28 U.S.C. § 1292(a)(1).
 
 
 3
 We review the denial of injunctive relief for abuse of discretion, which occurs if the district court's decision rests on a clearly erroneous finding of fact, an error of law, or a misapplication of law to the facts. See Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1242 (3d Cir.1983), cert. dismissed, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). In determining whether an underlying error exists, we exercise plenary review of the district court's application of the law of agency to the facts. See, e.g., Levendos v. Stern Entertainment, Inc., 909 F.2d 747, 748 (3d Cir.1990); United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.), cert. denied, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).
 
 II.
 
 4
 Most of the salient facts are not in dispute. In recounting them, we adopt the findings of the district court so long as they are not clearly erroneous. See, e.g., Mellon Bank PSFS, N.A. v. Farino, 960 F.2d 1217, 1220 (3d Cir.1992); Leeper v. United States, 756 F.2d 300, 308 (3d Cir.1985).
 
 
 5
 In 1990, the appellant, Ed Marco, photographed jewelry for Accent Magazine, a monthly trade journal for the costume jewelry industry. Accent Publishing Co., Inc. had engaged Marco on the basis of his portfolio, without a written contract and without negotiation concerning copyright or licensing.[1] Accent supplied the jewelry and the props, sketched the shots, and retained the right to have Marco reshoot unsatisfactory photographs. Accent did not name Marco on the magazine's masthead.
 
 
 6
 Marco, who has ten years' experience and who earned a Bachelor of Fine Arts degree in photography at the Philadelphia College of Art, made images for about six consecutive issues of the magazine and then for one or two later issues. He thus worked during every month except one over the course of his business with Accent.
 
 
 7
 Marco shot the pictures in his own studio on his own time, subject to Accent's deadlines. For the most part, he worked on still-lifes, without anyone from Accent present. On a few occasions, however, Accent provided live models; Accent's Art Director, Kevin Myers, would pose the models.
 
 
 8
 The exact scope of Myers' control at the live sessions remains in dispute. Marco challenges as clearly erroneous the district court's finding that Myers "directed, supervised, and provided artistic contribution to the photographic work." Testimony supports this finding. Myers generally concerned himself with the way models and jewelry looked in the photographs. See, e.g., Myers test., R. at 545, 575. Myers also would instruct Marco, in very general terms, to use more light. See id. Myers candidly admitted, however, that he did not become involved in the technical aspects of the photographs. For example, Myers described matters such as color balance and light meter readings to be beyond his ken and to be within the purview of a professional photographer. Myers test., R. at 561.
 
 
 9
 Marco did not receive an hourly wage or periodic salary. The district court's finding, that "Marco was paid at the rate of approximately $150 per photograph used in advertisements, and $450 per month for all photographs used in connection with articles," must be read as shorthand for the facts that Marco received about $450 per issue, that issues appeared monthly, and that Marco invoiced about one job each month. Insofar as the finding implies that Marco received a salary of $450 per month, the finding is clearly erroneous.
 
 
 10
 Accent thus paid Marco by the job. Accent also reimbursed Marco's film and processing expenses. Accent did not withhold taxes or pay employee benefits.
 
 
 11
 Marco claims to have authored the photographs and therefore to own the copyrights to the images. He moved for a preliminary injunction to prevent their unlicensed republication. After a hearing, the district court considered Marco's likelihood of success on the merits, and, reasoning that the photographs were works for hire, determined that Marco could not prevail on the merits of a copyright claim. Given its determination that Marco had little chance of success on the merits, the district court found Marco's evidence of irreparable injury to be insufficient, and the district court denied the preliminary injunction.
 
 III.
 
 12
 The photographs in dispute would be classified as "made for hire" if they were "prepared by an employee within the scope of his or her employment...." 17 U.S.C.A. § 101(1) (definition). The district court thus premised its judgment on the conclusion that Marco was Accent's employee, as determined by reference to principles of the general common law of agency.[2] Community for Creative Non-Violence v. Reid, 490 U.S. 730, 750-51, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989) ("CCNV "); see also Restatement (Second) of Agency § 220 (1957) (definition of master-servant relation) (cited in CCNV ).
 
 A.
 
 13
 In Community for Creative Non-Violence v. Reid ("CCNV"), a charity hired Reid to sculpt a homeless family huddled on a steam grate. The charity dictated the work's title and a tight deadline for completion. The parties agreed to a total cost of $15,000, which covered assistants and materials. The charity supplied the grate and a steam effect, visited Reid to check on progress, and insisted on the use of particular props. After completion, a dispute arose. The charity claimed that the sculpture was a work for hire. 490 U.S. at 733-36, 109 S.Ct. at 2169-71.
 
 
 14
 The Supreme Court held that the sculpture was not a work for hire because Reid was not the charity's employee. 490 U.S. at 751-52, 109 S.Ct. at 2178-79. The Court instructed that the term employee in the work for hire provision carries its common law agency meaning. Reid, said the Court, was not the charity's employee under common law agency principles.
 
 
 15
 Under this test, which incorporates the Restatement definition of employee, the CCNV opinion instructs courts to determine whether an employment relationship exists by considering the hiring party's right to control the manner and means by which the product is accomplished,[3] along with the following factors, among others: actual control over the details of the work,[4] the hired party's occupation,[5] local custom,[6] the skill required,[7] source of tools,[8] work location,[9] length of employment,[10] the right to assign more work,[11] the hired party's discretion over work hours,[12] payment method,[13] the regular business of the hiring party,[14] the parties' understanding,[15] the hiring party's role in hiring assistants,[16] tax treatment,[17] employee benefits,[18] and whether the hiring party is in business.[19]
 
 B.
 
 16
 Application of the CCNV and the Restatement factors demonstrates that the district court erred in concluding that Marco was Accent's employee. Under the common law of agency, Marco was an independent contractor.
 
 
 17
 In its application of agency law to the facts, the district court recognized only two factors that indicated independent contractor status: Marco used his own equipment and paid his own taxes. The district court did not discuss four more factors that indicate independent contractor status: Marco supplied his own studio, did not receive employee benefits, works in a distinct occupation, and was paid by the job. We need not further develop these six factors, which all indicate that Marco was an independent contractor.
 
 
 18
 In addition, the district court did not properly recognize that Marco had discretion over his work hours; he could work on any day, at any hour, and for any stretch of time he chose. The district court did consider Accent's imposition of deadlines in this context, but deadlines do not alter an independent contractor's discretion over work hours. We note that in CCNV, the charity had imposed a strict deadline for completion, 490 U.S. at 733, 109 S.Ct. at 2169, yet the Court did not weigh that deadline against a determination of independent contractor status. Id. at 752-53, 109 S.Ct. at 2179-80 (only the charity's control over the sculpture's specifications indicated an employment relationship).
 
 
 19
 Nor did the district court recognize that Accent's absence of a right to assign more work indicates Marco's independent contractor status. Although the district court considered Accent's right to require Marco to reshoot unsatisfactory images, this right was merely a right to final approval, which differs from the right to assign more work. The record does not suggest that Accent could assign any more than one issue's worth of photographs to Marco during any particular period. Accent could not, for example, require Marco to photograph its employee of the month.
 
 
 20
 Another factor, the skill required of a magazine photographer, indicates Marco's independent contractor status, although the district court held otherwise. The district court wrote: "Marco was not a skilled worker. The position of staff photographer did not have an educational requirement or [require] more than a minimal knowledge of photography." Marco, No. 91-2057 at 15. In this age of Polaroids and Handicams, the photography profession might not demand the expertise once required to create an image. Nonetheless, something beyond owning a camera is necessary to make photographs suitable for a trade journal. Accent, after all, did not hire Marco off the street; Accent hired him after seeing his portfolio. Accent's own Art Director testified that "[Marco is] the person that makes the shot work technically.... That's why I hire a photographer, I'm not a professional photographer, I'm an art director." R. at 561.
 
 
 21
 Photographers, moreover, fall along a spectrum in their skills. Near one end fall the likes of Ansel Adams, recording the American landscape with an 8 X 10 view camera. Near the other falls an untrained clerk, snapping mug shots with an instamatic. Marco, with a degree in photography and ten years experience, falls somewhere in between. As a factual matter, Marco may not be skilled in the sense that Ansel Adams was skilled. From a legal perspective, however, Marco is certainly skilled in the sense that Reid, the sculptor in the CCNV case, was skilled.
 
 
 22
 As regards another factor, the length of the relationship, Marco produced photographs for Accent for six months, but without a regular schedule or regular hours. Although the district court considered that the continuing nature of the relationship indicated employee status, the duration of a relationship indicates an employment relationship when the work is scheduled and periodic, or full-time. See Restatement § 220 cmt. h (factors indicating employment relationship include "employment over a considerable period of time with regular hours " (emphasis added)); compare CCNV, 490 U.S. at 734, 109 S.Ct. at 2169 (Reid worked on charity's sculpture exclusively). Thus, the duration of this relationship provides only weak evidence, if any, of an employment relationship.
 
 
 23
 Indeed, of all the factors that the district court considered, only three would weigh in favor of a determination that an employment relationship existed. First, Accent is in business, which increases the possibility that it would employ people. Second, Accent regularly publishes photographs of its own conception. As between Accent and a charity that does not regularly produce sculptures, it is more plausible that Accent would engage an artist as an employee, but Accent might easily accomplish its regular business by using independent contractors rather than employees.
 
 
 24
 Third, Accent exercised control over the details of the work. Specifically, Accent supplied jewelry, props, models, sketches intended to describe the exact composition of the photographs, and, at some sessions, an Art Director. This factor is not dispositive. CCNV, 490 U.S. at 752, 109 S.Ct. at 2179. Indeed, courts should keep this factor in perspective, since it resembles the "control of the product" test rejected by the Supreme Court in CCNV. See 490 U.S. at 737-51, 109 S.Ct. at 2171-78.
 
 
 25
 Moreover, Accent controlled only the subject matter and composition of the images. Accent did not control most aspects of the work, which include the choice of light sources, filters, lenses, camera, film, perspective, aperture setting, shutter speed, and processing techniques. It should be recalled that Art Director Myers attended only the live sessions and that his direction there was limited to composing the subjects and to commenting on the "feel" of the work. In his own words, "I am directing [Marco] on the composition of a photograph, I am directing him on the mood of the lighting, the emotion within a given scenario." R. at 561. This testimony illuminates the district court's finding that Myers "supervised" some of the sessions; even that supervision was limited to subject matter, composition, and "mood."
 
 
 26
 Accent's control of the product was thus no greater than the control exercised by the charity in CCNV, who articulated the subject and composition, who supplied models, who occasionally supervised the work, who constructed part of the sculpture, and who was still not an employer.[20] Although the district court was correct to consider this factor, it appears to have given it disproportionate consideration. The only significant difference between this case and CCNV is that here the hiring party is in the business of regularly publishing photographs in connection with advertisements and articles. That distinction does not give rise to an employment relationship.
 
 
 27
 We note that the remaining three factors are indeterminate in this case. First, the record before the district court was barren of evidence of custom,[21] so we will not address that factor. Second, the district court did not make any findings as to the parties' beliefs regarding the assumption of control by Accent and submission to control by Marco. See Restatement § 220 cmt. m (only parties' beliefs about assumption of control are dispositive). It appears, however, that the parties here did not hold a common belief. Third, there were no photography assistants, only models and stylists. Accent paid the models; Marco, the stylists. Even if Accent had paid both, Accent did no more than supply the models as subjects for the photographs. Supplying a subject represents some facet of control of the product, a factor already counted in favor of a determination that an employment relationship existed. Mischaracterizing a human subject as an "assistant," however, resulted in an improper double-counting of factors by the district court.
 
 
 28
 In summary, a magazine publisher's regular practice of commissioning photographs of its own conception does not create an employment relationship with an experienced photographer who uses his own equipment; who works at his own studio, on days and times of his choosing, without photography assistants hired by the publisher; and who receives payment without income tax withheld, without employee benefits, for discrete assignments rather than for hourly or periodic work.
 
 IV.
 
 29
 With respect to evidence of custom, Marco asserts that the district court abused its discretion in excluding the deposition testimony of an expert. When the expert was unable to testify on a particular date, the district court allowed Marco to proffer a transcript of the deposition. The district court, however, did not allow the expert to testify later and did not consider the deposition testimony in its opinion.
 
 
 30
 We note that, because the district court allowed Marco to proffer the deposition transcript, the transcript is part of the record for the limited purpose of reviewing the district court's exclusion of the expert testimony.[22]
 
 
 31
 We further note that the district court was within its discretion to exclude the testimony of Marco's expert. A trial court has broad discretion over whether to admit or exclude expert testimony. Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114 (3d Cir.), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). We observe in this regard that there are substantial questions as to this expert's qualifications, and that his testimony on custom appears to have been equivocal.
 
 V.
 
 32
 Because the district court held that Marco did not own the copyrights, the district court did not apply the rule that "[a] copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." Apple Computer, 714 F.2d at 1254; see also Marxe v. Jackson, 833 F.2d 1121, 1128 n. 4 (3d Cir.1987); Educational Testing Svcs. v. Katzman, 793 F.2d 533, 543-44 (3d Cir.1986); cf. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir.1992) (trademark injunction).
 
 
 33
 Instead, the district court applied the approach taken in Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319 (3d Cir.1967), which we have interpreted to apply when material peripheral to the plaintiff's business has been infringed, see Apple Computer at 1254, and which we have interpreted to require a stronger showing of irreparable harm as the plaintiff's likelihood of success on the merits wanes, see id. Damages were speculative in Kontes because the plaintiff's loss of business would result only indirectly from a competitor's use of a catalogue similar to the plaintiff's, and because the amount of that loss would be difficult to prove. In Apple Computer, however, the infringed programs were central to the plaintiff's operations.
 
 
 34
 The photographs here are central to Marco's business. His income as a photographer derives directly from the licensing and display of the images. If Marco is the exclusive owner of the copyrights, then with each unlicensed republication of Marco's images, Marco loses both a licensing fee and the opportunity to negotiate that fee. Thus, if Marco has made a prima facie showing of copyright infringement, he will be entitled on remand to a rebuttable presumption of irreparable injury. Apple Computer, 714 F.2d at 1254; Educational Testing Svcs., 793 F.2d at 543-44.
 
 VI.
 
 35
 As did the defendant in Apple Computer, Accent raised defenses before the district court other than the one we have addressed on appeal; specifically, Accent raised the defense of joint authorship, see CCNV, 490 U.S. at 753, 109 S.Ct. at 2179, and the defense that Marco or his agent licensed reuse of the images, see Nimmer on Copyright, § 10.08. In assessing Marco's likelihood of success on the merits, however, the district court did not go beyond Accent's work for hire defense to consider the issues of joint authorship and licensed use. Because it is appropriate that the district court consider these issues in the first instance and their relevance, if any, to a preliminary injunction, Apple Computer, 714 F.2d at 1255, we will remand for the district court's reconsideration of Marco's preliminary injunction motion.
 
 VII.
 
 36
 For the foregoing reasons, we will vacate the district court's judgment denying Marco's motion for a preliminary injunction, and we will remand for reconsideration of the motion in light of this opinion and in light of any relevant issues timely raised by the appellees.
 
 
 
 [1]
 We note that the district court's finding # 10 states: "Myers, in his capacity as Art Director of Accent, hired Marco as 'staff photographer' for Accent." Marco v. Accent Publishing Co., No. 91-2057, at 3, 1991 WL 212187 (E.D.Pa. Oct. 15, 1991). The term staff photographer has not been clearly defined in this litigation, but it appears to have been used by the district court as a synonym for the word employee
 Because the question of copyright ownership hinges on whether Marco had the legal status of an employee, finding # 10 states a legal conclusion (Marco was an employee) as if it were a fact (Marco was a staff photographer). Indeed, the district court completed the tautology and bootstrapped this "finding" into a legal conclusion: "Marco was not an independent contractor, but was hired as the staff photographer for the magazine." Marco, No. 91-2057 at 23.
 
 
 [2]
 The term servant as used in the Restatement (2d) of Agency § 220 is a synonym for employee as used in most statutes, including the work for hire provision of the Copyright Act. See Restatement, § 220 cmt. g. We use the terms employee and independent contractor to refer to the legal status of a hired party. Where the Restatement uses the expression master-servant relation, we use the expression employment relationship to refer to the relation between parties that defines employee status in the hired party
 
 
 [3]
 CCNV 490 U.S. at 751, 109 S.Ct. at 2178; Restatement (2d) Agency § 220(1) (cited in CCNV at 751 n. 18, 109 S.Ct. at 2178); see also Restatement § 220(2)(a) ("the extent of control which, by the agreement, the master may exercise over the details of the work")
 
 
 [4]
 See CCNV at 752, 109 S.Ct. at 2179 (considering the charity's actual direction of work and holding that extent of control was not dispositive)
 
 
 [5]
 Restatement § 220(2)(b)
 
 
 [6]
 Id. § 220(2)(c)
 
 
 [7]
 CCNV, 490 U.S. at 751, 109 S.Ct. at 2178; Restatement § 220(2)(d)
 
 
 [8]
 CCNV at 751, 109 S.Ct. at 2178; Restatement § 220(2)(e)
 
 
 [9]
 CCNV at 751, 109 S.Ct. at 2178; Restatement § 220(2)(e)
 
 
 [10]
 CCNV at 751, 109 S.Ct. at 2178; Restatement § 220(2)(f)
 
 
 [11]
 CCNV at 751, 109 S.Ct. at 2178
 
 
 [12]
 Id
 
 
 [13]
 Id.; Restatement § 220(2)(g)
 
 
 [14]
 CCNV at 752, 109 S.Ct. at 2179; Restatement § 220(2)(h)
 
 
 [15]
 Restatement § 220(i)
 
 
 [16]
 CCNV at 751-52, 109 S.Ct. at 2178-79
 
 
 [17]
 Id. at 752, 109 S.Ct. at 2179
 
 
 [18]
 Id
 
 
 [19]
 Id.; Restatement § 220(2)(j)
 
 
 [20]
 We note, as did the Supreme Court in CCNV, that actual control over the product can evidence joint authorship if Accent and Marco prepared the photographs with the intent that "their contributions be merged into inseparable or interdependent parts of a unitary whole." CCNV, 490 U.S. at 753, 109 S.Ct. at 2180 (quoting 17 U.S.C. § 101)
 
 
 [21]
 See infra Part IV
 
 
 [22]
 By separate order, Accent's motion to strike the transcript from the appellate record will therefore be denied