**F.A. DAVIS COMPANY**

v.

**WOLTERS KLUWER HEALTH, INC.**
**d/b/a Lippincott Williams &**
**Wilkins**

No. Civ.A. 05–CV–681.

United States District Court,
E.D. Pennsylvania.

Aug. 16, 2005.

C. Frederick Koenig, III, Volpe and Koenig, P.C., Philadelphia, PA, for F.A. Davis Company.

David J. Shannon, Leonard & Sciolla, LLP, M. Kelly Tillery, Pepper Hamilton LLP, Philadelphia, PA, Joshua J. Kaufman, Venable Baetjer Howard & Civiletti LLP, Mary Jane Saunders, Venable LLP, Washington, DC, for Wolters Kluwer Health, Inc. d/b/a Lippincott Williams & Wilkins.

## MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

Plaintiff F.A. Davis Company ("Plaintiff") asserts claims against Defendant Wolters Kluwer Health, Inc. d/b/a Lippincott Williams & Wilkins ("Defendant") alleging copyright infringement. Presently before the Court is Plaintiff's Motion for Preliminary Injunction. For the reasons that follow, this Motion will be granted. Pursuant to Federal Rule of Civil Procedure 52(a), the Court's findings of fact and conclusions of law are set forth below.

## I. Background

Plaintiff is a publishing company dedicated to the medical field, located in Philadelphia, Pennsylvania. *See* Declaration of Robert B. Schenck ("Schenck") at 1–2, attached to Plaintiff's Motion for Preliminary Injunction ("Motion"). Defendant is a publishing company, also located in Philadelphia, offering publications in a variety of specialized fields, including the medical profession. Schenck at 3. This dispute centers around Defendant's publication of a series of pocket reference guides for nurses—entitled "made Incredibly Quick"—that Plaintiff claims represent copyright infringements.[1] Prior to May 15, 2000, an individual by the name of Ehren Myers authored an original text entitled "RNotes Nurses's Clinical Reference Guide" ("RNotes"), which Plaintiff claims contains wholly original materials, and which is subject to Copyright Registration Nos. TXu 955–246 (unpublished version, dated May 15, 2000) and TX 6–097–667 (published version, dated December 8, 2004). *See* Copyright Certifications, attached as Exhibit A to Motion. Plaintiff acquired the copyrights to RNotes from Mr. Myers. *See* Author's Agreement, attached as Exhibit B to Motion; Declara-

---

1. The specific titles at issue are: (1) RN Facts made Incredibly Quick ("RN Facts"); (2) Critical Care Facts made Incredibly Quick; (3) Emergency Care Facts made Incredibly Quick; and (4) Maternal–Neonatal Facts made Incredibly Quick. In its Reply, Plaintiff drops its claim for injunctive relief as to the last publication. Reply in Support of Motion for Preliminary Injunction ("Plaintiff's Reply") at 11.

tion of Ehren Myers ("Myers"), attached to Plaintiff's Supplementation in Support of Motion for Preliminary Injunction ("Plaintiff's Supplement"); Schenck at 2. Upon assignment from Mr. Myers, Plaintiff has been the sole proprietor of all rights, titles, and interest in the copyrights attached to RNotes. Schenck at 2. Since September 2002, Plaintiff has published its guide with the appropriate copyright notice. *Id.* In October 2004, Defendant published and marketed its "made Incredibly Quick" series, which Plaintiff claims infringed its copyrighted materials. After attempts to settle the matter out of court, Plaintiff filed its Complaint on February 11, 2005 and moved for a preliminary injunction on March 7, 2005. Because this is a copyright action, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. Legal Standard

In considering the issuance of a preliminary injunction under Federal Rule of Civil Procedure 65, a court must balance: (1) the likelihood that the moving party will prevail on the merits at final hearing; (2) the extent to which the moving party will suffer irreparable injury in the absence of relief; (3) the extent to which the nonmoving party will suffer irreparable injury if the preliminary injunction is issued; and (4) the public interest. *See Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 879 (3d Cir. 1997). If a likelihood of success on the merits can be demonstrated, the Court must then balance the hardships associated with granting or denying the injunction, and the public interest. *See ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). While all four of the enumerated factors affect the appropriateness of issuance of a preliminary injunction, the first two factors—"a likelihood of success on the merits and the probability of irrepa-

rable harm if relief is not granted"—are "fundamental." *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,* 24 F.3d 519, 523 (3d Cir.1994) (citing *Hoxworth v. Blinder Robinson & Co.,* 903 F.2d 186, 198 (3d Cir.1990)). Thus, if either of these is not met, the Court should refuse to grant preliminary injunctive relief. *Id.* The party seeking an injunction bears the burden of demonstrating each of these prongs. *See, e.g., Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir.1980). Furthermore, a district court's order of an injunction must be accompanied by explicit findings of fact and conclusions of law. *See, e.g., Educ. Testing Svs. v. Katzman,* 793 F.2d 533, 537 (3d Cir.1986).

## III. Findings of Fact and Conclusions of Law

### A. *Plaintiff's Likelihood of Success on the Merits*

In order to prove copyright infringement, a plaintiff must establish: (1) that it owns a valid copyright interest; and (2) that defendant copied protected material. *See Ford Motor Co. v. Summit Motor Prods., Inc. ("Ford"),* 930 F.2d 277, 290–91 (3d Cir.1991); *Whelan Associates, Inc. v. Jaslow Dental Lab., Inc. ("Whelan"),* 797 F.2d 1222, 1231 (3d Cir.1986). Plaintiff's possession of a copyright registration certificate creates a rebuttal presumption that the work is copyrightable and that Plaintiff has a valid interest. *See Ford,* 930 F.2d at 291; *Tang v. Hwang,* 799 F.Supp. 499, 502 n. 8 (E.D.Pa.1992). Plaintiff has produced the requisite certificates here, *see* Copyright Certifications and Author's Agreement, and Defendant has offered no persuasive evidence to overcome the presumption of validity. Furthermore, Plaintiff has submitted an affidavit by Ehren Myers affirming that he authored the original text for RNotes,

which was copyrighted and then acquired by Plaintiff. *See* Myers at 1–2, 7. As a result, this Court finds that Plaintiff owns a valid copyright interest in RNotes and will focus on the second question, namely whether any of the protected material was copied.

■■■■ Courts have recognized that there is rarely direct evidence of copying; instead, a plaintiff can prove actual copying through evidence of: (1) access to the copyrighted material; and (2) substantial similarity of the copyrighted material and the allegedly infringing work. *Whelan,* 797 F.2d at 1231–32; *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC ("Schiffer"),* 2004 WL 2583817, at *9 (E.D.Pa. Nov.12, 2004). The question of "substantial similarity" has been further broken down into two inquiries: first, where technologically-complex issues are involved, a court may seek the opinion of experts to determine if there is sufficient similarity to rule that a plaintiff's work was "copied"; second, a court should apply the so-called "ordinary observer" test, which asks from the perspective of the lay observer if there appears to be copying sufficient to imply an illicit or unlawful appropriation of the copyrighted material. *See Whelan,* 797 F.2d at 1232; *Ford,* 930 F.2d at 291. The latter question focuses on the overall picture and not the minutiae. *See CMM Cable Rep., Inc. v. Keymarket Communications, Inc.,* 870 F.Supp. 631, 638 (M.D.Pa.1994); *see also Dam Things from Denmark a/k/a Troll Co. ApS v. Russ Berrie & Co., Inc.,* 290 F.3d 548, 561 (3d Cir.2002) (stating that more than trivial variations are necessary to demonstrate originality); *Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 608 (1st Cir. 1988).

The work at issue in this case is a fact-intensive pocket reference guide for nursing students and practitioners. Defendant argues that any applicable copyright protections are limited by the doctrines of merger and *scenes a faire.* Undergirding these claims is Defendant's basic assertion that RNotes contains primarily unprotected materials because it is merely a fact-based reference guide for nurses. The initial question before this Court, therefore, is what if any aspects of Plaintiff's publication are truly subject to copyright protections. *See, e.g., Feist Publications, Inc. v. Rural Tel. Sys. Co. ("Feist"),* 499 U.S. 340, 348, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."); *Schiffer,* 2004 WL 2583817 at *9.

■■■■ Plaintiff asserts that much of RNotes is protectable as a *compilation* of factual material. It is axiomatic that copyright protects merely the expression of ideas, and not the ideas themselves. *Whelan,* 797 F.2d at 1234; *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 906 (3d Cir.1975). Consequently, facts are not copyrightable. *Feist,* 499 U.S. at 344, 111 S.Ct. 1282. Under certain circumstances, however, a compilation of facts will be copyrightable, though the underlying materials or ideas would not be. *Id.; see also CCC Info. Sys., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61, 66 (2d Cir.1994) (explaining that there is little societal cost to protecting the expression of facts, as the facts themselves may still be repeated and reproduced). As a general matter, fact-intensive works and compilations receive lesser copyright protections. *Whelan,* 797 F.2d at 1236. However, the basic principle of copyright law continues to apply: a work will be protected if it evinces even a minimal level of originality or creativity. *See Feist,* 499 U.S. at 345, 111 S.Ct. 1282; *Southco, Inc. v. Kanebridge, Corp.,* 390 F.3d 276, 281 (3d Cir.2004) (noting that the originality

requirement is not stringent); *Schiffer*, 2004 WL 2583817 at *7. A work represents a copyrightable compilation if it involves the collection and assembly of existing facts, the selection and arrangement of those materials, and the creation, by virtue of selection, of an "original" work. *See Feist*, 499 U.S. at 357, 111 S.Ct. 1282. In terms of compilations, this means that garden-variety listings are not covered, but that protection will extend to those exhibiting some measure of creative expression or selection. *See Southco, Inc.*, 390 F.3d at 282.

▮▮▮ As described in greater detail below, while not every aspect of Plaintiff's publication may be copyrightable, the book itself and many of its components appear subject to copyright protections. The Supreme Court has stated,

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively. . . . These choices . . . are sufficiently original that Congress may protect such compilations through the copyright laws.

*Feist*, 499 U.S. at 347, 111 S.Ct. 1282. Whittling down the entire universe of facts available and necessary to nurses to a quick reference pocket guide (which may be easily employed by nurses in the field or by students just learning the practice) requires precisely the sort of creative choices that copyright law was intended to protect. *See Whelan*, 797 F.2d at 1236. There is no indication that RNotes was intended to be a comprehensive guide. *Cf. Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 83 (2d Cir.2004) (allowing for copyright protection where selection of materials required creativity and criteria was something other than all-inclusiveness). To the contrary, the author states that the guide was designed to be a "con-cise topic and fact selection tailored for nurses and nursing students," which involved "a great deal of care in making the original selection of topics, categories and items based on my own perception of what best to include in my text." Myers at 2. Certainly mere facts within the guide are not subject to protection, and only limited protection adheres to other sections of the guide. However, the overall guide and certain sections should enjoy federal copyright protection.

▮▮▮ In addition to questioning the guide's overall copyrightability, Defendant argues that any applicable copyright protections are limited by the doctrines of merger and *scenes a faire*. Under copyright law, merger occurs where there is only one or a limited number of ways of expressing a certain idea, so that copyright protection of the expression would necessarily result in copyright protection of the idea itself. *See, e.g., Kregos v. Associated Press*, 937 F.2d 700, 705–6 (2d Cir.1991); *Concrete Mach. Co., Inc.*, 843 F.2d at 606. Stated another way, if an idea can only be expressed in one way, that one way will never be subject to copyright protection; if an idea can be expressed in many ways, those many ways may be copyrighted. *See Educ. Testing Sys.*, 793 F.2d at 539.

▮▮▮ Relatedly, *scenes a faire* are "incidents, characters or settings which are as a practical matter indispensable . . . in the treatment of a given topic." *Whelan*, 797 F.2d at 1236; *see also Dun & Bradstreet Software Sys., Inc. v. Grace Consulting, Inc. ("Dun")*, 307 F.3d 197, 214 (3d Cir. 2002). This doctrine is arguably broader than merger, and excludes from protection "those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting," or any elements of a work that necessarily result from external factors inherent in the subject matter.

*Dun,* 307 F.3d at 214–15. A court applying this doctrine must gauge the elements' indispensability from the perspective of the original artist or creator. *Id.* at 215. The doctrine arises most frequently in the cinematic or literary arena, though it is applied in certain technological contexts as well. *See, e.g., id.; Burgess v. Chase–Riboud,* 765 F.Supp. 233, 241 (E.D.Pa. 1991).

■■■■ Plaintiff alleges illegal copying of the following elements of its guide: (1) certain illustrations; (2) the set-up and design of the book, including the tabs; (3) the included blank forms; and (4) certain content, most notably, the LABS section. The Court will address each of these claims in turn, first, considering the extent of copyright protection applicable and, second, asking whether there is a substantial similarity apparent to the ordinary observer sufficient to indicate copying.[2]

### 1. *Illustrations*

Plaintiff claims that Defendant copied illustrations from its publication, including "Mixing insulins" and "Starting an I.V." Comparing these illustrations in Plaintiff's and Defendant's publications, it is clear that elements overlap and that the pictures are incredibly similar overall. *See* RNotes at 113, 116; RN Facts at 59, 61. However, there are differences in the accompanying text and layout. Furthermore, the Court believes that the doctrines of merger and *scenes a faire* apply to limit Plaintiff's right to monopolize the use of these illustrations. There are a limited number of ways to depict these medical procedures accurately. The elements of the illustrations that overlap—the shape and angle of the needle, a description of the needle's

components, drawings of the skin's surface—must be considered *scenes a faire,* as any accurate diagram of how to inject insulin or start an I.V. would necessarily include them. *Cf. Dun,* 307 F.3d at 214–15. (noting no protection to the extent expression of elements are limited by external factors). As a result, the Court finds no likelihood of a copyright violation by Defendant here.

### 2. *Design of the Guide*

Plaintiff next alleges copying of the overall design of its guide, which includes a pocket-size tabular configuration, tabs with certain abbreviations, and an index on the back cover. Plaintiff concedes that the configuration of a book is generally not copyrightable. Motion at 18; *see also* Letter from John H. Ashley of the United States Copyright Office (confirming Office position that book designs are generally not copyrightable). However, Plaintiff argues that the layout, selection of topics, and tabs evince enough creativity to warrant protection under *Feist.*

The Court recognizes that the overlap in topic selection is substantial, and that copying would be apparent from the perspective of the ordinary observer—Defendant's publication, like Plaintiff's, has eight tabs and they are virtually the same (the only difference is that Plaintiff includes a section labeled "OB/GYN," while Defendant has a section labeled "Teach"). Moreover, if copyright protections attach, merger and *scenes a faire* are inapplicable, as the evidence presented establishes that these topics and the specific layout are not necessary or elemental in a quick reference guide for nurses; other guides on the market feature different topic selections

---

**2.** Plaintiff has adequately established that Defendant had access to its publication; RNotes has been on bookshelves since as early as September 2002, Schenck at 2–4. *See Cottrill*

*v. Spears,* 87 Fed.Appx. 803, 806 (3d Cir.2004) (holding that plaintiff must establish "meaningful access" to work in question).

and tabular arrangements. *See* Mosby's Nursing PDQ (ten tabs with limited overlap in topic selection); Fast Facts for Adult Critical Care by Kathy White (twelve tabs); Porter's Nursing Guide (four tabs).

However, Plaintiff cites no sufficiently analogous case for its argument, and the distinction Plaintiff draws between topic selection and layout versus book configuration appears artificial. To the extent there is overlapping content within the sections of each publication, such is discussed below; the specific question here is whether Plaintiff has a protectable copyright interest in selection of the topic headings, tabs and design of its book. To the limited extent that there is law on point, it cuts against Plaintiff. *See, e.g., Southco, Inc.,* 390 F.3d at 285 (stating that short names and titles of works cannot be copyrighted). As a result, because Plaintiff has not adequately met its burden of establishing that copyright protections are applicable, the Court rules that it has not yet demonstrated a likelihood of success on the merits as to this specific component of its claim.

### 3. *Blank Forms*

Both Plaintiff's and Defendant's guides contain blank forms for nurses to complete in assessing a patient, which Plaintiff claims that Defendant copied. *See* RNotes at 48–49; RN Facts at 2–3. The Third Circuit has determined that blank forms may be copyrighted if they are "sufficiently innovative that their arrangement of information is itself informative." *Whelan,* 797 F.2d at 1243 (citing *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1250 (3d Cir.1983)). The forms at issue here—found in the ASSESS section of each publication and apparently designed to assist a nurse in recording a brief, general report regarding each patient—seem to evince the requisite origi-

nality and informativeness to be protected. Beyond merely structuring a nurse's notes, the assessment forms actually guide nurses step-by-step through the information they need to obtain from a patient. Defendant may argue that the information required at intake and/or assessment of a patient is largely dictated by external factors. However, this does not explain the near-identical nature of the blank forms contained in the ASSESS chapters of Plaintiff's and Defendant's works; while any form might need to include a patient's admit date, for example, Defendant has offered no medical explanation for why its "assessment notes" form contains exactly the same headings as Plaintiff's form. As a result, the Court finds that, from the perspective of the ordinary observer, copying is apparent in this section of Defendant's guide.

### 4. *Content Behind the Individual Tabs/ LABS Section*

Although much of the content of RNotes and RN Facts appears distinct, the LABS sections in each are startlingly similar. Both publications contain a section entitled LABS, which contains common laboratory values frequently used by nurses. *See* RNotes at 15–21; RN Facts at 42–47. The section is divided into numerous topic headings (such as "general chemistry" and "hematology") and includes a series of common laboratory tests related to that subject, with an accompanying range of expected values. Plaintiff's LABS section does not purport to be a comprehensive guide to all available laboratory tests nurses might need, but rather a careful selection of those which are the most significant and frequently used. As the author notes, "Since there are hundreds of laboratory tests, in creating my RNotes pocket text, it was necessary for me to select and organize the labs in a manner in which I thought would be the most useful to nurses

and nursing students." Myers at 4 (further stating "there is no set group of labs that is used for every patient" and that "selection of lab values ... necessarily took considerable time and effort"). As a result, this is precisely the sort of factual compilation protected by copyright law, as described in *Feist*. Furthermore, the fact that these tests may be contained in other publications does not preclude protection of Plaintiff's guide, given the creativity apparent in the compilation of Plaintiff's particular list. *See Kregos*, 937 F.2d at 705 (recognizing that nearly all factual compilations contain information that is also published elsewhere).

Moreover, the doctrines of merger and *scenes a faire* are inapplicable. While the actual lab values and ranges may be dictated by medical facts, the culling of certain laboratory tests requires a high degree of selectivity and original thought and, as the evidence reflects, different quick reference guides prioritize and include different laboratory tests and headings. *See* Mosby's Nursing PDQ at 88–92; Fast Facts for Adult Critical Care by Kathy White, Lab/IV/Bld section; *see also* Exhibits 2–5, attached to Plaintiff's Reply (collecting manuals of laboratory and diagnostic tests, which each feature different laboratory tests than those set forth in Plaintiff's and Defendant's quick reference guides).

Examining both Plaintiff's and Defendant's guides, this Court finds a substantial similarity in the selection and arrangement of facts within the LABS section. Defendant's publication has virtually the same topic headings as that of Plaintiff and includes all but approximately ten of the same lab tests. These trivial differences do not undermine the substantial copying apparent from the perspective of the ordinary observer. *See Concrete Mach. Co., Inc.*, 843 F.2d at 608. Significantly, Defendant has copied not the factual aspect of this section (the lab values), but rather the subjective, creative aspect of this section (the inclusion of certain laboratory tests over others). As a result, there is a clear copyright violation. Furthermore, this copied LABS section is contained in Defendant's RN Facts, as well as in Emergency Care Facts made Incredibly Quick and Critical Care Facts made Incredibly Quick.

### 5. *Conclusion*

Because this Court determines that there has been copying of significant and important sections of Plaintiff's work, it need not determine Plaintiff's likelihood of establishing copyright infringement as to all aspects of its publication: "It is sufficient if a material and substantial part shall have been copied, even though it be but a small part of the whole." *Henry Holt & Co., to Use of Felderman v. Liggett & Myers Tobacco Co.*, 23 F.Supp. 302, 303 (E.D.Pa.1938); *see also Burgess*, 765 F.Supp. at 242 (finding copyright infringement where significant, but not total, copying was apparent between two works). Plaintiff has demonstrated likely copyright infringement related to its LABS section and blank forms contained within RNotes. The evidence establishes that these are not merely peripheral or insignificant components of Plaintiff's work, but rather key elements of any effective reference guide for nurses. Indeed, Defendant seemingly recognizes the significance of the LABS section by including it in three of its quick reference publications. As a result, this Court finds that Plaintiff has adequately demonstrated a likelihood of success on the merits as to its copyright infringement claim.

### B. *Irreparable Injury to Plaintiff*

██ Once a plaintiff makes a *prima facie* showing of copyright infringement by

establishing the existence of a valid copyright and copying by defendant, there is a rebuttable presumption of irreparable injury. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 206 (3d Cir.2003); *Apple Computer, Inc. v. Franklin Computer, Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983); *Educ. Testing Sys.*, 793 F.2d at 543–44. In the present case, the allegedly infringed material is not merely peripheral to Plaintiff's business; instead, Plaintiff has made a *prima facie* showing of significant infringement of one of the most important sections of its product. *Cf. Marco v. Accent Publ'g Co., Inc.*, 969 F.2d 1547, 1553 (3d Cir.1992). In addition, Defendant has not successfully rebutted Plaintiff's claims of ongoing injury. Accordingly, no greater or more detailed showing is required and irreparable injury is presumed in this case. *See, e.g., Apple Computer, Inc.*, 714 F.2d at 1254; *see also* Declaration of Robert H. Craven, attached to Plaintiff's Supplement (detailing nature and extent of Plaintiff's ongoing injuries stemming from infringement).

### C. *Balancing of Interests*

 Courts in this jurisdiction have long recognized that the public interest is served by upholding and protecting valid copyrights. *Apple Computer, Inc.*, 714 F.2d at 1254; *Tang*, 799 F.Supp. at 506. In addition, Defendant is a large company, with billions of dollars in annual sales. *See* Schenck at 3; Defendant's Corporate Profile, attached as Exhibit F to Motion. Defendant has not established that the temporary suspension in sale of three of its publications would result in injury that would not be compensable by money damages. In fact, because Defendant has voluntarily ceased distribution of certain publications involved in this litigation, it is not clear if significant additional damages will follow with the issuance of a temporary injunction. As a result, the Court finds that the balancing of interests weighs in favor of issuance of an injunction.

### D. *Required Bond*

 Rule 65 requires security by a plaintiff "for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Fed.R.Civ.P. 65(c). At the hearing before this Court, Defendant requested a bond of $500,000 based on approximate sales figures for the guides. However, no evidence was presented in support of this amount. Moreover, as stated, Defendant has already voluntarily withdrawn certain publications, raising the question of what additional damages would follow from the injunction. Plaintiff, in turn, requested a minimal bond. The required bond shall be $200,000. The Court will consider altering this bond based on the submission of additional evidence, should either party so choose.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion will be granted and a preliminary injunction shall issue. An appropriate Order follows.

### ORDER

**AND NOW**, this 16th day of August, 2005, upon consideration of Plaintiff's Motion for Preliminary Injunction (docket no. 5), Defendant's response thereto, and following a hearing on April 12, 2005, it is **ORDERED** that the Motion is **GRANTED**. Accordingly, it is **FURTHER ORDERED** that:

1. During the pendency of litigation in the above-captioned matter, Defendant and its officers, agents, servants, employees, and attorneys, and those persons in active concert with

Defendant who receive actual notice of this Injunction, are restrained and enjoined from manufacturing, importing, licensing, offering to the public, displaying, or offering for sale Defendant's publications entitled: RN Facts made Incredibly Quick; Emergency Care Facts made Incredibly Quick; and Critical Care Facts made Incredibly Quick.

2. Defendant and its officers, agents, servants, employees, and attorneys, and those persons in active concert with Defendant who receive actual notice of this Injunction shall recall and collect all copies of the enjoined works for deposit in a bonded warehouse in this judicial district pending the outcome of this litigation.

3. Defendant shall issue a Notice of Recall upon all persons or entities that have distributed or are distributing the enjoined works.

4. Plaintiff shall post a bond in the amount of $200,000 within five (5) days from the date of this Order or this Preliminary Injunction shall be dissolved.